UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

DENNIS S. KOZLOWSKI,
              *Plaintiff-Appellant,*

v.

HAMPTON SCHOOL BOARD,
              *Defendant-Appellee,*          No. 02-1485

and

BETHEL HIGH SCHOOL; CITY OF
HAMPTON,
              *Defendants.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
James E. Bradberry, Magistrate Judge.
(CA-01-37-4)

Argued: May 8, 2003

Decided: October 3, 2003

Before LUTTIG and MICHAEL, Circuit Judges, and
Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

---

Vacated and remanded by unpublished opinion. Judge Goodwin
wrote the opinion, in which Judge Luttig and Judge Michael joined.

---

## COUNSEL

**ARGUED:** David Michael Pearline, LAW OFFICE OF DAVID
PEARLINE, Virginia Beach, Virginia, for Appellant. Cynthia Eppes

Hudson, Deputy City Attorney, HAMPTON CITY ATTORNEY'S
OFFICE, Hampton, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

**OPINION**

GOODWIN, District Judge:

Dennis Kozlowski, the long-time head football coach at Bethel
High School in Hampton, Virginia, brought suit against the Hampton
City School Board under the Age Discrimination in Employment Act
of 1967 (ADEA), 29 U.S.C. § 623 *et seq*. Kozlowski claimed that the
Board, acting through its agent, Principal William Pearson, failed to
renew his coaching contract because of his age. The case went to trial,
and the jury returned a verdict for the defendant School Board. On
appeal, Kozlowski raises various challenges to the court's jury
instructions, two challenges to the court's evidentiary rulings, and an
additional challenge to the court's failure to sequester Pearson from
the trial. After review, we conclude that the district court erred by
excluding evidence of prior similar acts of age discrimination by
Pearson, by admitting evidence of Kozlowski's prior DUI arrests, and
by refusing to sequester Pearson, a main defense fact witness. The
court also erred by failing to instruct the jury that it could infer dis-
crimination if it did not believe the proffered reasons for the non-
renewal. Any one of these errors standing alone may have been harm-
less; considered collectively, however, the errors were substantially
prejudicial to Kozlowski's case. Accordingly, we vacate the judgment
of the district court and remand for a new trial.

I.

The plaintiff, Dennis Kozlowski, worked at Bethel High School
from 1968 to 2000. At various times during his tenure at Bethel,
Kozlowski served as an English instructor, track coach, football

coach, interim basketball coach, and athletic director. Starting in 1974, Kozlowski served as the head football coach. During his football coaching career, his teams won three state championships and a number of other honors. Kozlowski was employed as football coach at Bethel by the Hampton City School Board under one-year contracts that were annually renewed by the Board. While the Board took the formal action to renew contracts, the Board had delegated its authority over contract renewal to the local school administrators, here the Bethel High School principal, and accepted as a matter of course the principal's recommendations regarding renewal.

In the fall of 1993, William Pearson became the new principal at Bethel High School. Pearson had previously served as a teacher and assistant principal at various schools in the area, and during these years had been actively involved in the schools' athletic programs, coaching a number of sports including football. He testified that he was "very involved in every athletic endeavor" at Bethel from the day he was hired. Pearson paid very close attention to the football program, attending almost every game and scrimmage and also attending practice once or twice a week for the whole season.

In December of 1998, Pearson recommended another candidate, Tracy Parker, to the Board for head football coach. The Board followed Pearson's recommendation, and Kozlowski's coaching contract was not renewed for the following year. Kozlowski's teaching and athletic director contracts were renewed, however, and he held those positions until his retirement the following year. At the time of the non-renewal, Pearson and Kozlowski were both fifty-four years old. Parker, Kozlowski's replacement, was under forty years old.

Pearson met with Kozlowski on December 4, 1998, to discuss his plans to replace Kozlowski as head coach. Both sides agree that a number of reasons for non-renewal were discussed at this meeting, including Kozlowski's use of an ineligible player, his failure to attend a coaches' All-District meeting, and Pearson's dissatisfaction with the overall direction of the football program. According to Kozlowski, Pearson also told him that "I want a younger coach. . . . I need new blood in it. I want people who can communicate with the kids better." Pearson denies saying anything to Kozlowski about his age. On December 10, Pearson prepared a memo to Kozlowski informing him

of Pearson's final decision not to renew his contract. In this memo, Pearson provided the following reasons for non-renewal: "Over the past two years, I have observed many instances of poor handling of football players, player distractions, and overall team dissension and dysfunction which probably contributed to the level of play on the field . . . ." He also mentioned the ineligible player and missing the district coaches' meeting. The letter does not mention Kozlowski's age.

Kozlowski responded by writing a letter dated January 5, 1999, in which he tried to address the issues raised by Pearson. Pearson denies receiving this letter. In January of 1999, Kozlowski wrote to the superintendent of the Hampton City Schools about Pearson's recommendation. The Board then met with Kozlowski in a closed session in February of 1999, where Kozlowski was represented by counsel and was given the opportunity to present his case. Pearson wrote a letter to the School Board chairman in March of 1999 detailing the reasons for the non-renewal recommendation. The Board ultimately decided to accept Pearson's recommendation, as was their usual practice.

Kozlowski filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging age discrimination, and the EEOC issued Kozlowski a right-to-sue letter. Kozlowski then brought the current age discrimination suit under the ADEA. The parties consented to try the case before Magistrate Judge James E. Bradberry, and the case went to trial.[1] The jury returned a verdict for the defendant School Board. Kozlowski now appeals.

At trial, plaintiff's counsel proffered various jury instructions, some of which were accepted, with modifications, by the district court. In addition to a general age discrimination instruction, the plaintiff proffered a pretext instruction modeled after the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and a mixed-motive instruction modeled after the standard established in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). On appeal, the plaintiff objects to various aspects of the

---

[1]For the sake of simplicity, we will refer to the magistrate judge as the district court.

final jury instructions. Specifically, the plaintiff appeals (1) the court's failure to provide one of the requested mixed-motive instructions; (2) the court's insertion of "because of age" into the *McDonnell Douglas prima facie* case; (3) the court's refusal to instruct the jury that it could infer age discrimination from the falsity of the defendant's proffered reasons; and (4) the court's insertion of the term "solely" into the phrase "because of age." The plaintiff also appeals two evidentiary rulings. First, the plaintiff appeals the district court's exclusion of evidence proffered by the plaintiff of prior similar alleged acts of age discrimination. Second, the plaintiff appeals the district court's admission of evidence related to Kozlowski's past arrests for driving under the influence of alcohol. Finally, the plaintiff appeals the district court's refusal to sequester Pearson, a primary defense witness, from the trial proceedings. We first address the plaintiff's various challenges to the jury instructions, and then take up his evidentiary and sequestration claims. After we address each ground for appeal separately, we will address whether the errors taken as a whole warrant a new trial.

## II.

As noted above, the plaintiff raises four challenges to the court's jury instructions. At trial the plaintiff objected to the court's rulings on the first three of these issues, but failed to object to the fourth ground for appeal, the court's use of the term "solely." We will first discuss the three non-forfeited instructional issues and then turn to the forfeited error.

## A.

We review a district court's refusal to give a requested instruction for abuse of discretion. *United States v. Abbas*, 74 F.3d 506, 513 (4th Cir. 1996). As for challenges to the content of an instruction, the test "is simply the practical one of whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Spell v. McDaniel*, 824 F.2d 1380, 1395 (4th Cir. 1987). A court has "considerable discretion in choosing the specific wording of instructions." *United States v. Piche*, 981 F.2d 706, 712 (4th Cir. 1992). "Even if instruc-

tions are flawed, there can be no reversal unless the error seriously prejudiced the challenging party's case." *S. Atl. Ltd. P'ship of Tenn. v. Riese*, 284 F.3d 518, 530 (4th Cir. 2002).

The plaintiff's non-forfeited challenges to the jury instructions are: (1) the court's refusal to give a requested mixed-motive instruction; (2) the court's modification of the *prima facie* case instruction to include "because of age;" and (3) the court's refusal to instruct the jury that it could infer discrimination from its disbelief of the defendant's proffered legitimate reasons.

In order to place these objections in context, we must first set out briefly the legal frameworks governing age discrimination cases. There are two methods by which a plaintiff may prevail in an age discrimination case. Under the first method, the mixed-motive framework, the plaintiff must prove that age played a substantial motivating role in the defendant's decision. *See Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995) (*citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)), *abrogated on other grounds*, *Desert Palace, Inc. v. Costa*, 539 U.S. ___, 123 S.Ct. 2148 (2003). If the plaintiff makes this showing, then the burden of persuasion shifts to the defendant to prove that it would have taken the same action even absent any consideration of age. *Id.* at 1141-42 (*citing Price Waterhouse*, 490 U.S. at 258, 259-60, 276).

Alternatively, the plaintiff may proceed under the pretext framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff must first prove four elements to make out a *prima facie* case:

> (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that at the time of the adverse employment action she was performing at a level that met her employer's legitimate job expectations; and (4) that the position remained open to or was filled by similarly qualified applicants outside the protected class.

*Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999). If the plaintiff proves these four elements, she has established a presumption of discrimination. *Id.* The defendant can rebut this pre-

sumption by producing evidence of a legitimate, non-discriminatory reason for its actions. *Id.* If the defendant meets this burden, then the presumption disappears and the plaintiff bears the ultimate burden of proving discrimination. *Id.*

In the past, the plaintiff qualified for the mixed-motive framework, which has been called "more advantageous" to the plaintiff because she has the opportunity to shift the burden of persuasion to the defendant, only when she presented "direct evidence" of discrimination. *See Fuller*, 67 F.3d at 1141-42. In a recent decision, *Desert Palace, Inc. v. Costa*, 539 U.S. ___, 123 S.Ct. 2148 (2003), the Supreme Court eliminated this "direct evidence" requirement in Title VII cases, holding that in order to qualify for a mixed-motive instruction, "a plaintiff need only present sufficient evidence [be it direct or circumstantial] for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" *Id.* at 2155 (quoting 42 U.S.C. § 2000e-2(m)).

In this case we are not asked to address — and do not address — whether *Desert Palace*, a Title VII case, also applies to age discrimination cases under the ADEA. As we conclude below, the plaintiff received the benefit of the more advantageous mixed-motive instruction in this case. Accordingly, the court's instruction satisfied *Desert Palace* even if that decision applies to the ADEA. With this in mind, we now turn to the plaintiff's objections to the court's jury charge on these two frameworks.

1.

The plaintiff first argues that the district court erred by refusing to provide a requested mixed-motive instruction, and thereby deprived him of the benefit of the more advantageous mixed-motive proof scheme established in *Price Waterhouse*. The plaintiff requested two instructions related to a mixed-motive theory of the case. First, the plaintiff requested an instruction stating that if the plaintiff proves that age was a substantial motivating factor in Pearson's decision not to renew Kozlowski's contract, then the burden of persuasion shifts to the defendant to show that it would have made the same decision even absent discriminatory animus. The court provided this instruction.

Thus, contrary to the plaintiff's assertion, it is clear that he did receive the benefit of a mixed-motive instruction.

Second, the plaintiff requested, but the court refused to provide, an instruction on "direct evidence" of discrimination. This instruction attempted to identify for the jury the specific types of evidence that constituted "direct evidence." This second instruction was unnecessary and would have added confusion to an already complicated instruction. The court did give the instruction — standard in all cases — that "the law makes no distinction between direct and circumstantial evidence but simply requires that the jury find from the facts in accordance with the preponderance of all the evidence in a case, both direct and circumstantial." The instruction as a whole conveyed the correct impression that the jury needed to determine, considering both direct and circumstantial evidence, whether the Board failed to renew Kozlowski's contract because of age. The court properly refused to give the plaintiff's second requested instruction, and the plaintiff's objections in this regard are without merit.

2.

Apart from these mixed-motive instructions, the plaintiff proposed a series of three jury instructions based on the *McDonnell Douglas* pretext framework, and the plaintiff's second objection arises in this portion of the instruction. The first proposed instruction stated that the plaintiff had an "initial burden of proof" to establish, "by a preponderance of the evidence," that he was a member of the protected class, that the Board failed to renew his coaching contract, that he was qualified for his job at the time, and that the Board replaced him with a substantially younger coach. The second instruction explained that the burden then shifts to the Board to articulate a legitimate, non-discriminatory reason for the non-renewal.[2] The third instruction

---

[2]This instruction as proposed was flawed in two respects. First, the instruction did not clarify whether this shifting burden was one of production or of persuasion. As discussed below, this burden is simply one of production. *See infra* part II.A.2. Second, because the shifting burden is one of production, this instruction should not have been given at all. *See id.*

stated that if the Board met this burden, the plaintiff had to introduce evidence that the Board's purported reasons were pretextual.

Over the objection of the plaintiff, the district court modified the first instruction — relating to the *prima facie* case — to the effect that Kozlowski had to present evidence not only that the Board failed to renew his coaching contract, but that the Board failed to renew it "because of plaintiff's age." The court's modification resulted in an incorrect statement of the *prima facie* case under *McDonnell Douglas*. *Cf. Brinkley*, 180 F.3d at 607 (listing the four elements of the *prima facie* case). The modified instruction injected the ultimate factual question in an ADEA case — whether the adverse employment action was because of age — into the *prima facie* case. We agree with Kozlowski that the court misstated the elements of the plaintiff's *prima facie* case.

To assess the impact of this misstatement of the *prima facie* case, however, we must first consider the function of the *prima facie* case in the *McDonnell Douglas* pretext framework. In this framework, the *prima facie* case serves two functions in the ordering of evidence and burdens. First, the *prima facie* case serves as a hurdle to the plaintiff, albeit a low one. This effect is seen both at the summary judgment stage and at trial. At summary judgment, if the plaintiff has failed to produce evidence from which a reasonable fact-finder could find the existence of the four elements of the *prima facie* case, then the court will award judgment to the defendant. *See Mitchell v. Data General Corp.*, 12 F.3d 1310, 1361 (4th Cir. 1993), *modified on other grounds*, *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429-30 (4th Cir. 2000). Even if the plaintiff has survived summary judgment by presenting evidence that *could* lead a fact-finder to find the existence of all four factors, at trial the plaintiff must actually persuade the fact-finder, by a preponderance of the evidence, that the four elements of the *prima facie* case are present. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 n.3 (1993). If the jury does not credit the plaintiff's evidence relating to the *prima facie* case and finds that one or more of the four elements is unproven, then its verdict must be for the defendant regardless of the defendant's ability to present evidence of a legitimate, non discriminatory reason for its actions. *Id.*; *Gafford v. General Elec. Co.*, 997 F.2d 150, 168 (6th Cir. 1993).

The second function of the *prima facie* case is to create a presumption of discrimination, albeit one that is usually easy to overcome. Once the plaintiff proves the elements of the *prima facie* case (either at summary judgment or at trial), discrimination is presumed unless the defendant can present evidence of a legitimate, non-discriminatory reason for its actions. *St. Mary's*, 509 U.S. at 509. Importantly, the defendant's burden here is merely one of production, not persuasion. To overcome the presumption of discrimination, the defendant is not required to *prove* that it had a legitimate, non-discriminatory reason for its actions, but simply to present evidence from which a reasonable fact-finder could conclude that the defendant acted based on a legitimate, non-discriminatory reason. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the defendant fails to meet this burden of production by "fail[ing] to introduce evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then the plaintiff is entitled to judgment simply by proving the *prima facie* case. *St. Mary's*, 509 U.S. at 509.[3]

Because the defendant's burden is one of production, that burden "is an issue solely for determination by the court," not by the jury. *Watson v. Southeastern Penn. Transp. Auth.*, 207 F.3d 207, 221 (3d Cir. 2000). *See also St. Mary's*, 509 U.S. at 509 ("[T]he burden-of-production determination necessarily *precedes* the credibility-assessment stage."). Accordingly, a jury should never be instructed on the defendant's burden of production. *See Watson*, 207 F.3d at 221. If the defendant meets this burden of production by presenting evi-

---

[3]If the defendant fails to meet its burden of production, the plaintiff has the opportunity to prevail both at summary judgment and at trial. When the defendant fails to meet its burden and "any rational person would have to find the existence of facts constituting a *prima facie* case," then the plaintiff is entitled to summary judgment. *St. Mary's*, 509 U.S. at 509. In contrast, if "reasonable minds could differ as to whether a preponderance of the evidence establishes the facts of a *prima facie* case," then the case will be submitted to the trier of fact solely on the elements of the *prima facie* case. *Id.* at 509-10. If the finder of fact determines that the plaintiff has proven the elements of the *prima facie* case, then the presumption of discrimination is established and the verdict must be for the plaintiff. *Id.* at 510 n.3.

dence of a legitimate, non-discriminatory reason, the presumption created by the *prima facie* case "drops from the case," *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983), or "disappears," *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). To put it another way, once the court is satisfied that the defendant has met its burden of production, there is no longer any presumption of discrimination and "the trier of fact proceeds to decide the ultimate question: whether plaintiff has proved that the defendant intentionally discriminated against [him]." *St. Mary's*, 509 U.S. at 511 (quotations and citations omitted) (alteration in original).

This brings us to evaluating the effect in this case of the court's improper modification of the requested *prima facie* case instruction. By inserting "because of age" into the *prima facie* case, the court made the plaintiff's initial hurdle more difficult — instead of simply needing to prove background circumstances where discrimination might be inferred, the court required the plaintiff to prove the ultimate issue in the case, namely whether Pearson acted because of age. And by making this hurdle more difficult, the court correspondingly made it more difficult for the plaintiff to receive the benefit of the presumption of discrimination that accompanies the establishment of the *prima facie* case. Because it is undisputed that the Board met its burden of production, however, neither of these effects prejudiced Kozlowski's case. Pearson testified as to a number of legitimate, non-discriminatory reasons for the non-renewal, and the Board presented other evidence, including contemporaneous documents, which also reflected those reasons. The task of determining whether any of those legitimate reasons actually motivated Pearson was for the jury.

Once the Board met its burden of production, the sole issue for the jury in this case was "the ultimate question [of] whether plaintiff has proved that the defendant intentionally discriminated against [him] because of his" age. *St. Mary's*, 509 U.S. at 511 (citations and quotations omitted) (first alteration added). Because this was the only question for the jury, it would make no difference whether the jury understood this issue to be part of the plaintiff's initial burden, the plaintiff's ultimate burden, or both. Kozlowksi was not prejudiced by the additional element inserted into the *prima facie* case, because that element, which he bore the burden to prove, was the sole element at issue in the case. Under the court's improper instruction, the jury was

under the correct assumption that the plaintiff bore the burden of proving, by a preponderance of the evidence, that Pearson did not renew Kozlowski's contract because of his age.

In addition, because the Board met its burden of production, "[t]he presumption [of discrimination], having fulfilled its role of forcing the defendant to come forward with some response, simply drop[ped] out of the picture," and "the shifted burden of production became irrelevant." *Id.* at 510-11, 507. Kozlowski was not deprived of the benefit of the *prima facie* case's presumption of discrimination, because that presumption disappeared once the Board had presented evidence of a legitimate, non-discriminatory reason for his non-renewal. Any unnecessary confusion that the jury may have encountered in figuring out the interplay among the elements of the *prima facie* case, the defendant's burden of production, and the plaintiff's ultimate burden of proving discrimination is attributable primarily to the improper and needlessly complex jury instructions requested by the plaintiff in the first instance. In light of all of this, we conclude that the court's misstatement of the elements of the *McDonnell Douglas prima facie* case, standing alone, was harmless error.[4]

3.

Kozlowski next argues that the court erred by refusing to instruct the jury that if it did not believe the reasons given by Pearson for the non-renewal, then it could infer, but need not infer, that age was the

---

[4]In contrast, when the defendant fails to meet its burden of production, a misstatement of the *prima facie* case may well be substantially prejudicial. If the Board had failed to offer any evidence of a legitimate, non-discriminatory reason for its actions, then the only issue in the case would have been whether Kozlowski had established the *prima facie* case. *St. Mary's*, 509 U.S. at 509-510. Because the elements of the *prima facie* case were uncontested, Kozlowski would have been entitled to summary judgment. If the court had additionally required Kozlowski to prove that the non-renewal was "because of age," the case would have erroneously proceeded to the jury, which might have found against Kozlowski. This would have deprived Kozlowski of the benefit of the presumption of discrimination, which, in this scenario, would have been outcome-determinative.

real reason for the decision. Kozlowksi argues that this instruction was particularly important in this case, because the jury asked about this issue during its deliberations. Specifically, the jury asked the court, "By virtue of exclusion of defense's reasons for nonrenewal, must we conclude under the law that age discrimination has occurred?" When discussing this question with counsel, the court initially indicated that its answer would be no. After some discussion, however, the court decided simply to repeat the general instruction without addressing the question specifically.

Kozlowksi's requested instruction is a correct statement of the law. *See Reeves*, 530 U.S. at 147-48. Different courts have taken varied approaches, however, on the question of whether a court is required to instruct a jury on the inference of discrimination that may be drawn from disbelief of the employer's stated reasons for its actions. At least three circuits have held, or implied in *dicta*, that an instruction on this permissible inference is required, at least in cases where it appears from the evidence that the jury may doubt the employer's stated reasons for its actions, and that the failure to provide the instruction in such circumstances may constitute reversible error. *See Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1236-41 (10th Cir. 2002) (holding); *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 279-80 (3d Cir. 1998) (holding); *Cabrera v. Jakabovitz*, 24 F.3d 372, 382 (2d Cir. 1994) (*dicta*). In addition, the Eleventh Circuit has quoted positively from both *Smith* and *Cabrera* in support of the proposition that a jury should be instructed on this permissible inference. *See Palmer v. Bd. of Regents of the Univ. Sys. of Ga.*, 208 F.3d 969, 974-75 (11th Cir. 2000). The Eleventh Circuit ultimately determined that the plaintiff in *Palmer* could not demonstrate that she "was prejudiced by the trial court's refusal to deliver the specific instructions proposed by her." *Id.* at 975. Accordingly, the court found no reversible error, although it suggested that the circuit's Committee on Pattern Jury Instructions might want to revisit the issue. *Id.*

In contrast, the Seventh Circuit has held that while this instruction may be given, it is not required and a court does not commit error in refusing to provide it. *See Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1994). The court explained that:

> [While the plaintiff's requested instruction] is a correct statement of the law, . . . a judge need not deliver instruc-

tions describing all valid legal principles. Especially not when the principle in question describes a permissible, but not an obligatory, inference. Many an inference is permissible. Rather than describing each, the judge may and usually should leave the subject to the argument of counsel. . . . Instructions on the topic were unnecessary.

*Id.* Similarly, the Eighth Circuit has held that this instruction need not be given in a case where the "evidence . . . provides little to create a fact issue on pretext," and added in *dicta* that "[w]e do not express any view as to whether it ever would be reversible error for a trial court to fail to give a pretext instruction, though we tend to doubt it." *Moore v. Robertson Fire Protection Dist.*, 249 F.3d 786, 790 & n.9 (8th Cir. 2001).[5] The First Circuit has likewise expressed doubt, in *dicta*, "that such an explanation is compulsory, even if properly requested." *Fite v. Digital Equipment Corp.*, 232 F.3d 3, 7 (1st Cir. 2000).

We agree with the general principle that a judge need not instruct a jury on all valid legal principles in a given case. Nonetheless, the particular inference at issue here — that if the jury disbelieves the reasons given by the employer to justify its actions, then the jury may infer discrimination — has in the past sparked considerable disagreement among the courts. Prior to *Reeves*, courts took a variety of approaches to when and if evidence of the *prima facie* case, combined with evidence tending to disprove the employer's stated reason for its actions, would suffice to permit a jury to determine that the real reason behind the employer's actions was discrimination. *See Reeves*, 530 U.S. at 140-41 (listing cases adopting various approaches). In *Reeves* the Supreme Court clarified that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148. Given the amount of disagreement among judges of the federal courts of appeals over whether a jury may infer discrimination simply from their disbe-

---

[5]It is worth noting that the Eighth Circuit in *Moore* did not state, even in *dicta*, that it would never be erroneous for a court to fail to instruct a jury on this permissible inference. Rather, the court merely expressed doubt that such an error would be reversible. *Id.*

lief of the employer's stated justifications, it seems unlikely that jurors will uniformly intuit that such an inference is permissible. As the Tenth Circuit stated, "[t]his is a difficult matter for courts, and would certainly be difficult for a jury." *Townsend*, 294 F.3d at 1241. *See also Smith*, 147 F.3d at 280-81 ("In light of the decades it has taken for the courts to shape and refine the *McDonnell Douglas* standard into its present form and the inordinate amount of ink that has been spilled over the question of how a jury may use its finding of pretext, it would be disingenuous to argue that it is nothing more than a matter of common sense.").

We do not suggest that a court in a pretext case must always instruct jurors that they may, but need not, infer discrimination from their disbelief of an employer's stated reasons. Rather, we hold that when the evidence presented at trial creates some likelihood that the jury might disbelieve the legitimate, non-discriminatory reasons given by the employer to justify its actions, then the jury should be instructed on this permissible inference. The majority of circuit courts that have considered this question agree that at least in these circumstances, this instruction should be given. *See Townsend*, 294 F.3d at 1241; *Smith*, 147 F.3d at 279-80; *Cabrera*, 24 F.3d at 382-83; *Palmer*, 208 F.3d at 974-75. That said, an erroneous failure to give this instruction when circumstances call for it will not always require reversal. Rather, the court's failure to give this instruction, even when erroneous, is still subject to harmless error review. *See Townsend*, 294 F.3d at 1241. *Cf. United States v. Lewis*, 53 F.3d 29, 32 (4th Cir. 1995) (finding that, in the criminal context, a court's refusal to provide a requested instruction is reversible only when prejudicial, even when the instruction is correct and not otherwise covered in the instruction).

Turning to the case at hand, we conclude that the court erred by refusing to provide some form of the plaintiff's requested instruction that "[i]f you do not believe the Defendant's explanation for its actions, then you may infer, but need not infer, that . . . the Defendant intentionally discriminated against [the Plaintiff] because of age." Evidence presented by the plaintiff undermined at least some of the reasons that Pearson had given to explain his decision not to renew Kozlowski's contract. For example, Pearson claimed that Bernie West, the stepfather of one of Kozlowski's football players, Tim

Smith, had complained to Pearson that Kozlowski had refused to provide him with game films that Smith needed to show to college recruiters. West testified differently, stating that he had expressed concern to Pearson about being able to get game films at some future point, but that he never complained about Kozlowski and in fact had never requested any films. Pearson also stated that Glenn Price, the father of Jason Price, had complained to him that Kozlowski had threatened to dismiss Jason from the team because he did not have a signed note excusing him from practice. Glenn Price testified that he had never spoken with Pearson about any such incident. Pearson's testimony as to several other incidents was also undermined by Kozlowski's evidence.

It was up to the jury to determine whether the plaintiff's evidence on these matters was credible, and how directly that evidence undermined Pearson's stated reasons. But in light of this evidence, this is not a case where the "evidence . . . provides little to create a fact issue on pretext." *Moore*, 249 F.3d at 790. The jurors' question during deliberations about how they were permitted to draw inferences in the event that they disbelieved Pearson further illustrates that the plaintiff had presented a meaningful amount of evidence suggesting pretext. In this situation, the district court erred in refusing to instruct the jurors that if they disbelieved the reasons given by Pearson, they could infer, but need not infer, that the real reason for the non-renewal was Kozlowski's age.

Although the district court erred here, this error warrants reversal only if it "seriously prejudiced the challenging party's case." *S. Atl. Ltd. P'ship of Tenn. v. Riese*, 284 F.3d 518, 530 (4th Cir. 2002). Because we determine in part IV, *infra*, that Kozlowski is entitled to a new trial due to the collective weight of this and the other errors, we decline to determine whether this error alone would warrant reversal.

### B.

The plaintiff next challenges the district court's use of the phrase "solely because of age" in the jury charge. The plaintiff did not object to this modification at trial, so we review for plain error. When a party fails to object to a jury instruction, "[w]e are prepared to reverse

. . . [for plain error] only when we can conclude that a particular jury instruction must necessarily have caused the jury to act in complete ignorance of, or to have misapplied, fundamentally controlling legal principles to the inevitable prejudice of an aggrieved party." *Spell v. McDaniel*, 824 F.2d 1380, 1395 (4th Cir. 1987).

The plaintiff requested the general instruction that the ADEA "makes it unlawful to refuse to hire or discharge any individual because of such individual's age." The court modified the instruction in two ways. First, it changed "discharge" to "renew any employment contract" so as to conform the instruction to the facts of this case. Second, the court inserted the word "solely," so that the instruction read that the plaintiff had to prove that the Board did not renew his contract "solely because of his age."

The court's addition of the term "solely" was erroneous. "It is clear . . . that the law requires only that age be a causative or determinative factor in the decision, not the sole reason." *Smith v. Univ. of N.C.*, 632 F.2d 316, 337 (4th Cir. 1980). Nonetheless, in order to constitute plain error, this error "must necessarily have caused the jury to act in complete ignorance of, or to have misapplied, fundamentally controlling legal principles to the inevitable prejudice of an aggrieved party." *Spell*, 824 F.2d at 1395. In this case, the court repeated the phrase "solely because of age" four times, twice during the original instruction and twice during follow-up instructions after questions from the jury. While the court repeated the term "solely" four times, it did not elaborate on the meaning of that term. In contrast, the court correctly instructed the jury a number of times, and at length, that age had to be a determining factor in the decision not to renew. For example, the court correctly explained that the Board is not liable if

> it would have taken the same action even in the absence of discriminatory intent. This means that . . . even if it put aside the discriminatory intent or if discriminatory intent did not exist at all, the defendant would have taken the same adverse action against the plaintiff. In other words the defendant [is not liable if] . . . its legitimate reasons standing alone would have induced it to make the same decision. In this particular case, the defendant acted on the recommendation of the principal. This means that in the case you must

find . . . that the principal would have still made the same
decision to recommend the nonrenewal of Dennis
Kozlowski's contract even if he was not motivated by a
desire to have younger coaches.

The judge repeated this extended explanation several times. Given
this repeated, detailed, and extended explanation of the correct causa-
tion standard, we think it likely that the jury decided the case under
the more fully explained (and correct) requested instruction that age
must be the determining factor, the court's use of the term "solely"
notwithstanding. *Cf. Cabrera*, 24 F.3d at 384 ("Because of the
Court's extensive and repeated instructions that the plaintiff bore the
burden of proving discrimination, we believe that the jury could not
have been led astray by the Court's brief comment to the contrary.").
Certainly we cannot conclude that the court's instruction as a whole
on the issue of causation "caused the jury to act in complete ignorance
of, or to . . . misappl[y], fundamentally controlling legal principles to
the inevitable prejudice of an aggrieved party." *Spell*, 824 F.2d at
1395. The court's insertion of the term "solely" into the instructions,
when taken in light of the extended and correct explanation of the
determinative cause standard, does not rise to the level of plain error.[6]

---

[6]In light of our ultimate decision to remand for a new trial, we note
two other errors in the jury instructions that the plaintiff has not raised
on appeal. During one of the court's descriptions of the burden-shifting
scheme, the court stated that once the plaintiff made out the *prima facie*
case, the School Board must articulate a legitimate, non-discriminatory
reason for its actions. The court then instructed that "[t]he School Board
does not have to persuade you of this fact by a preponderance of the evi-
dence. Instead, the School Board is required only to produce enough evi-
dence in contradiction of plaintiff's claim to create a genuine issue of
fact in your mind." This is a serious error — the court seems to be saying
that so long as the Board introduces enough evidence to create a genuine
issue of fact in the minds of the jurors, then the Board should prevail.
This error helps illustrate why a jury should never be instructed on a
party's burden of production. It is true that a burden of production is met
when a party introduces evidence sufficient to create a genuine issue of
material fact. But this is a determination that is always in the province
of the court, never the jury. The jury's task is to *decide* close questions
of fact, not to figure out when the evidence creates a close question.
Because the plaintiff does not raise this error on appeal, however, we do
not consider it as part of our decision to remand.

### III.

In addition to his challenges to the jury instructions, the plaintiff raises two evidentiary challenges and one challenge to the court's refusal to sequester a witness. The plaintiff objects to the court's exclusion of evidence related to alleged prior similar acts of discrimination by Pearson and to the court's admission of evidence related to his prior arrests for driving under the influence of alcohol. Finally, he challenges the court's refusal to sequester Pearson, a main defense witness, during the course of the trial. We will address these issues one at a time.

### A.

Kozlowski argues that the district court erred in excluding his proffered evidence of alleged prior similar acts of age discrimination by Pearson. We review challenges to the court's admission or exclusion of evidence for abuse of discretion. *United States v. Sitt*, 250 F.3d 878, 888 (4th Cir. 2001). When the court has committed an error regarding the admission or exclusion of evidence, that error is subject to harmless error review. *See Taylor v. Va. Union Univ.*, 193 F.3d 219, 234-35 (4th Cir. 1999).

Plaintiff's counsel proffered testimony showing that in April of 1994, Pearson replaced three coaches, ages 43, 52, and 46, with youn-

---

Second, during one of the follow-up instructions the court stated that "[i]n discrimination cases if there is a legitimate reason for an action to be taken and there is an improper and unlawful reason for an action to be taken both of which are established by a preponderance of the evidence, the defendant is entitled to judgment." This is incorrect. If age is a determinative factor in the decision, then the presence of another, legitimate factor does not absolve the defendant of liability. The court went on to add that the plaintiff must show that "the primary reason" for his non-renewal was his age. This is a bit closer, although it is imprecise and therefore potentially misleading. The phrase "primary reason" seems to imply that the jury should look at the reasons and see which was the "most important," or something to that effect. This is a different test than whether age was a but-for cause. Again, the plaintiff has not raised this error, so we do not consider it.

ger coaches, ages 31, 33, and 20-something. According to the plaintiff's proffer, "Dennis Kozlowski and Frank Brown, a football trainer, would have testified that [prior to replacing these three coaches] Principal Pearson stated that, quote, He wanted younger coaches at Bethel and that it was time for new blood, unquote." The plaintiff also argued that the evidence would have shown that the reasons given by Pearson for those replacements were false. The district court excluded this testimony, explaining that these events were five years removed from Kozlowski's non-renewal, that they involved "some other matters within the school system," and that they would not be relevant to the case at hand. The court explained that it "was unwilling to allow a principal's entire career at the school to be subjected to review for the purpose of establishing in 1998 and 1999 an act of discrimination against Mr. Kozlowski."

In a somewhat different context, we have held that a district court abused its discretion by excluding evidence of the contemporaneous use of racial slurs by members of a fire department, which were proffered to show that the plaintiff, a black man, was not hired due to his race. *See Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1132-35 (4th Cir. 1988). We stated generally that "[t]he principle is well-established that prior acts and statements should be admitted where necessary to show state of mind." *Id.* at 1133. We cited favorably to *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1423 (7th Cir. 1986), a case holding that evidence of past incidents of harassment unrelated to the specific disputed action were properly admissible to show race-based intent. *Id.* at 1134.[7] In addition, other courts have generally held that evidence of similar alleged acts of discrimination, or other acts which reveal a discriminatory attitude generally, are admissible to show a defendant's intent in acting against the plaintiff. *See, e.g.*, *Robinson v. Runyon*, 149 F.3d 507, 512-13 (6th Cir. 1998) (holding that in race discrimination case, district court abused its discretion by excluding a "racist [mock] employment application, which was circulated and allegedly known to upper level management, yet

---

[7]The court in *Mullen* nonetheless affirmed the jury verdict for the defendant fire company, holding that the exclusion was harmless because of overwhelming evidence that the plaintiff's physical infirmities prevented him from performing the job of a fireman. *Mullen*, 853 F.2d at 1135-36.

not immediately condemned, [as the application] plainly makes the existence of racially motivated actions by management of the CBMC more probable."); *Polanco v. City of Austin*, 78 F.3d 968, 980 (5th Cir. 1996) (noting that evidence of discriminatory practices against Hispanics in the workplace was probative of whether individual plaintiff was terminated because of his nationality); *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990) ("As a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent." (listing cases)); *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1102 (8th Cir. 1988) (holding that in case where plaintiff claimed that he was fired from Ford dealership because of his race and age, district court erred in "prevent[ing] Estes from presenting the jury with evidence that Ford excluded blacks from its workforce, that Ford had fired two other employees specifically because of their ages, that Ford's service department offered free rides to white customers while black customers were told to rent cars, and that members of Ford's management referred to blacks as 'niggers.'"), *abrogated on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

The defendant argues that it was proper to exclude the proffered testimony because it was too removed in time and because admission of the evidence would have simply resulted in duplicative and time-consuming "mini-trials" where the plaintiff and the defendant would have litigated whether the prior non-renewals were motivated by age, just as they were litigating the issue in this case. The cases cited by the defendant in support of the court's exclusion here, however, are quite distinguishable from the case at hand.

In this circuit, the defense relies on *Patterson v. McLean Credit Union*, 805 F.2d 1143 (4th Cir. 1986), *aff'd in part, vacated in part*, 491 U.S. 164 (1989). In *Patterson*, the plaintiff brought suit under 42 U.S.C. § 1981 for racial harassment and for being discharged because of her race. *Id.* at 1144. The district court correctly dismissed her racial harassment claim, ruling that claims of general racial harassment, unconnected to some adverse employment action, was not cognizable under § 1981. *Id.* at 1145.[8] At trial on her discriminatory

---

[8] This ruling was affirmed on appeal first by this court, *id.* at 1145-46, and then by the U.S. Supreme Court, *Patterson v. McLean Credit Union*, 491 U.S. 164, 176-85 (1989).

discharge claim, the court excluded evidence of racial harassment of another employee ten years prior to the plaintiff's own discharge. *Id.* at 1147. We affirmed, stating that "[b]ecause of the remoteness in time of the events to which [the other employee] would have testified, the probative value of that evidence would have been slight and the court could properly conclude that its slight value was outweighed by the likelihood of confusion it might create on the issue on which it was tendered." *Id.*

*Patterson* is distinguishable from this case in several respects. First of all, in *Patterson* the court excluded evidence of general racial harassment. This evidence was most relevant to Patterson's racial harassment claim, which the court properly had dismissed as not cognizable under § 1981. Here, in contrast, the alleged prior acts are of precisely the same nature as the acts alleged in this suit — a failure to renew the contract of an older coach, replacement with a younger coach, and contemporaneous statements that the reason for the non-renewal was age. Second, the alleged prior harassment in *Patterson* was ten years removed from the plaintiff's non-promotion and layoff, whereas the acts here are only five years removed.

The defendant also cites *Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304 (8th Cir. 1984). In *Johnson*, the Eighth Circuit held that the district court had not abused its discretion in a Title VII race discrimination case when it refused to allow cross-examination of a company employee concerning "a petition circulated among black supervisors [that] . . . alleged discrimination in that black employees had not been promoted." *Id.* at 1311. The court did not permit discussion of the petition because "to allow questions raising a new and unproven claim would necessitate inquiry into the truth or falsity of the claim. The court [also] noted that the petition was circulated three-and-one-half years *after* Johnson's termination." *Id.* The main difference between *Johnson* and this case is that here, the evidence of prior age discrimination is directly probative of Pearson's motivation — the testimony would have been that Pearson said he was not renewing prior contracts because the coaches were too old. In contrast, in *Johnson* the petition was directly probative only of a *perception* of discrimination among certain black supervisors, not of the fact that actual discrimination existed.

We recognize that at some point, prior acts of discrimination or discriminatory statements are sufficiently removed in time and/or similarity from the current dispute that their probative value is slim and their exclusion justifiable. In this case, however, the potential probative value of these prior acts was more than slight. It is an open question whether the jury would have credited the testimony of the plaintiff and of Frank Brown, a football trainer who had also been replaced by Pearson. But if the jury had credited the testimony, these prior acts of age discrimination would have been highly probative of Pearson's motivation in this case. We also recognize that the scope of the plaintiff's proffered testimony may have been overly broad. The plaintiff proffered evidence not only of the non-renewals and the contemporaneous age-related statements, but also evidence allegedly disproving the reasons that Pearson would have given for those non-renewals. The defense is likely correct that allowing the plaintiff the opportunity to prove, person by person, that in each case Pearson's purported reasons for non-renewal were false would have required lengthy and cumbersome mini-trials. This process would have required, for each non-renewed individual, testimony from Pearson about why, five years earlier, he had refused to renew that coach's contract, rebuttal evidence and/or testimony from the plaintiff showing that those reasons were false, and reply evidence and/or testimony from the Board further justifying Pearson's decision. We find no error in the court's decision to exclude this type of evidence, which would have been quite time-consuming and would have distracted the jury from the central issue in this case, namely whether Pearson had failed to renew Kozlowski's contract because of age.

In contrast with the proffer of evidence attempting to disprove Pearson's reasons for his non-renewal of the three coaches in 1994, Kozlowski's evidence of Pearson's past age-related comments would have been relatively simple to present and rebut, and, if credited, highly probative as to Pearson's intent. It appears that the defendant did not contest the fact that the three coaches had been replaced by younger coaches, so the rebuttal evidence would have consisted simply of testimony by Pearson denying making these discriminatory statements. The jury would then have been left to make credibility determinations about this testimony, just as it was required to make a credibility determination regarding Kozlowski's and Pearson's con-

flicting testimony about their December 4 conversation about Kozlowski's non-renewal.

In sum, the presentation of this evidence would not have required extended "mini-trials." The testimony related to essentially identical instances of alleged discriminatory non-renewals and bore directly on Pearson's motivations. The prior acts were less than five years removed from Kozlowski's non-renewal, and were performed by the same individual, Pearson, whose motivation was in question here. We conclude that in these circumstances, the court abused its discretion in refusing to admit the limited evidence of Pearson's alleged prior statements of discriminatory intent.

Even though it was error to exclude this evidence, the question remains whether that error was harmless. The court in *Mullen* held that the exclusion was harmless because there was overwhelming evidence that the plaintiff lacked the physical capability to be a fireman. *Mullen*, 853 F.2d at 1135-36. Here, the evidence is closer. As explained in detail in part II.A.3, the plaintiff presented evidence rebutting some of Pearson's purported legitimate reasons for the non-renewal. Furthermore, during the course of the jury's deliberations, the jury asked the court whether it must infer discrimination if it did not believe Pearson's stated reasons. This question demonstrates that at least some of the jurors had serious doubts about whether they believed any of Pearson's stated legitimate reasons. On the other hand, it also seems apparent from the jury's verdict that they did not credit Kozlowski's testimony about his meeting with Pearson. It is questionable whether similar testimony from Kozlowski about prior events would have buttressed his case. It is more difficult to conjecture about whether the jury would have credited similar testimony from Frank Brown. In the end, we need not decide whether this error alone would warrant reversal. It is enough to say, as we conclude in part IV, that this error, in combination with the other errors we identify in this opinion, substantially prejudiced Kozlowski's case.

B.

The plaintiff also challenges the district court's admission, over objection, of evidence that Kozlowski had been arrested several times for driving under the influence of alcohol. Evidence was also intro-

duced showing that Kozlowski was acquitted of these charges. Kozlowski objected that the DUI evidence was prejudicial and irrelevant, because his DUI arrests were not one of the reasons given by Pearson for his non-renewal. The Board conceded at trial, and concedes on appeal, that Pearson did not consider Kozlowski's DUI arrests in making his decision. The Board argues, however, that at least one of the Board members indicated that Kozlowski's DUI arrests and related adverse publicity may have been a factor in his perception of Kozlowski's ability to continue coaching. The court admitted the evidence on this ground, noting that while Pearson made the initial decision not to renew the contract, that decision was ratified by the Board.

The critical question, then, is whether the Board's liability in this case depended solely on the motivation of Pearson (in which case the DUI evidence was irrelevant, and its admission error) or whether the motivation of the Board members themselves might also have been relevant to the Board's liability. Under the court's own jury instructions, it was error to admit this evidence. The court instructed the jury that "[i]n this particular case, the decision not to renew plaintiff's contract was made by the School Board on the recommendation of its agent, Principal David Pearson. If you find that Principal Pearson's recommendation was because of the age of Dennis Kozlowski, then you must hold the School Board liable for the acts of its agent, David Pearson." The court essentially instructed the jury that the Board members' personal motivations in ratifying Pearson's decision were not relevant — if Pearson was improperly motivated by age, then the Board was liable. The ADEA, like Title VII, imposes liability on an "employer" who acts with the proscribed motive. Both statutes define "employer" to include "any agent of" the employer. *See* 29 U.S.C. § 630(b) (West 2003) (ADEA); 42 U.S.C. § 2000e(b) (West 2003) (Title VII). In applying this agency standard, the Supreme Court held that an employer is liable for the discriminatory acts of a supervisor who is "principally responsible" for an adverse employment action or who is the "actual decisionmaker," even if that supervisor does not make the "formal decision." *Reeves*, 530 U.S. at 151-52. Here, both parties agree that Pearson was Kozlowski's direct supervisor, that the School Board had delegated its authority to not renew coaching contracts to Pearson, and that Pearson was the actual decisionmaker in

the non-renewal of Kozlowski's contract.[9] Accordingly, if Pearson failed to renew the contract because of age, the Board is liable regardless of the subjective intents of the Board members.

The court therefore correctly instructed the jury to focus solely on the intent of Pearson in failing to renew Kozlowksi's contract. Under this instruction, evidence related solely to the motives of School Board members was irrelevant to any issue that was material to the case. The only impact the DUI evidence could have had on the jury, then, was to improperly prejudice them against Kozlowski. As with the exclusion of the evidence of prior similar acts of discrimination, we need not decide whether this error, standing alone, would warrant reversal. Rather, this error provides yet another reason, in combination with the other errors discussed herein, to find that a retrial is warranted.

---

[9]James Haggard, the School Board chairman, testified as follows about the decision-making authority here:

— "The School Board is ultimately responsible for the hiring of all school personnel. That responsibility is then delegated down to the superintendent of schools and then for supplemental contracts further delegated down to the building administrators, so in the case of Mr. Kozlowski, it would have been within the scope of authority of the principal of the Bethel High School to award that supplement [contract] for the year." JA 146.

— "It was the Board's belief that it was certainly within the scope of authority of the principal at Bethel High School to make that decision for renewal or nonrenewal." JA 150.

— "[I]n the decision not to renew Coach Kozlowski's supplemental coaching contract, the Board made a decision not to get involved in that because the Board's belief was that the responsibility and duty had been delegated to the principal of the school, . . . Mr. Pearson." JA 548.

According to this evidence, even if the Board was the formal decision-maker in this case, it took that formal action based solely on Pearson's recommendation, which it accepted as conclusive. This shows that Pearson was principally responsible for the decision.

### C.

The final objection raised by the plaintiff is the court's denial of his motion to sequester Pearson from the trial. "We review *de novo* the district court's order refusing sequestration or sequestering a person whom it finds exempt under section . . . (2) [an officer or employee of a party which is not a natural person designated as its representative by its attorney], and we review for clear error factual findings about who is a party, officer, or employee." *Opus 3 Ltd. v. Heritage Park, Inc.*, 91 F.3d 625, 628 (4th Cir. 1996). Furthermore, "we construe the rule's exemptions narrowly in favor of the party requesting sequestration," and "the party seeking to avoid sequestration of a witness bears the burden of proving that a Rule 615 exemption applies." *Id.* (quotations and citations omitted).

Under Rule 615 of the *Federal Rules of Evidence*,

> [a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses. . . . This rule does not authorize exclusion of . . . (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause. . . .

*Fed. R. Evid.* 615. Before trial, plaintiff's counsel requested that Pearson be excluded, noting that Rule 615(2) applies only to officers or employees, and that Pearson had retired and was no longer employed by the Board. Before permitting the Board an opportunity to respond, the court ruled that "if he is going to be designated as the representative for the City because of his involvement in the case, I will let him sit at counsel table with counsel for the trial. That will not mean that [the defendant] may then have a member of the School Board. He will be the sole representative."

From this ruling, it does not appear that the court made a factual finding that Pearson was, at the time of the trial, still an officer or employee of the Board.[10] Rather, it appears that the court interpreted

---

[10]If the court had made such a factual finding, that finding would be clearly erroneous. Pearson himself testified at trial that he retired from the Board's employment in June of 2000, over a year before the trial began.

Rule 615(2) to include a former officer or employee who is meaningfully involved in the case. This interpretation contradicts the text of the rule, which plainly refers to "an officer or employee" but makes no mention of a former officer or employee. Obviously, a corporate defendant cannot itself be present, so Rule 615(2) allows a corporate defendant to designate one of its current employees or officers to attend the trial and not to be excluded. But just as a natural person may not designate her most important witness as her representative at trial, a corporate defendant cannot designate its most important witness simply because he is a former officer or employee.

On appeal, the Board argues in the alternative that Pearson's presence at trial can be justified under part (3) of Rule 615, which provides an exception for "a person whose presence is shown by a party to be essential to the presentation of the parties' cause." We are doubtful that the court's ruling against sequestration was based on this exception — certainly the Board made no showing of necessity, and the court made no findings to that effect. To satisfy the exception, a party must show, among other things, that the "the witness's presence is 'essential' rather than simply desirable." *United States v. Jackson*, 60 F.3d 128, 135 (2d Cir. 1995). Putting aside the Board's failure to present any evidence or argument to the district court regarding Pearson's "essential" role in its presentation of its case, the Board's arguments on appeal still fall far short of establishing that Pearson's presence at trial was anything more than convenient for the Board. Thus, the court erred in refusing to sequester Pearson.

Our prior cases make clear our reluctance to find harmless a court's erroneous refusal to sequester a witness, particularly an important fact witness. In *Opus 3 Ltd. v. Heritage Park, Inc.*, 91 F.3d 625 (1996), we noted that Rule 615 "is designed to discourage and expose fabrication, inaccuracy, and collusion," and explained that "sequestering witnesses 'is (next to cross-examination) one of the greatest engines that the skill of man has ever invented for the detection of liars in a court of justice.'" 91 F.3d at 628 (quoting 6 John H. Wigmore, *Wigmore on Evidence* § 1838, at 463 (James H. Chadbourn ed., 1976)). When the individual in question is a key fact witness, "adherence to the sequestration rule is most important." *Opus*, 91 F.3d at 629. In *United States v. Farnham*, 791 F.2d 331 (4th Cir. 1986), we explained our reluctance to find a sequestration error harmless:

> [W]e understand the mandatory, unambiguous language of the rule to reflect the drafters' recognition that any defendant in Farnham's position would find it almost impossible to sustain the burden of proving the negative inference that the second agent's testimony would have been different had he been sequestered. A strict prejudice requirement of this sort would be not only unduly harsh but also self-defeating, in that it would swallow a rule carefully designed to aid the truth-seeking process and preserve the durability and acceptability of verdicts.

*Farnham*, 791 F.3d at 335. Despite our rejection of a strict prejudice requirement in *Farnham*, we later clarified that "violations of Fed. R. Evid. 615 are subject to the harmless error rule." *United States v. Harris*, 39 F.3d 1262, 1268 (4th Cir. 1994) (citation omitted). We noted our willingness to presume prejudice "where it would be impossible for the defendant to prove that the [non-sequestered witness's] testimony would have been different if he had not heard the first agent's testimony." *Id.* Nonetheless, we explained that "[w]e have no need to presume prejudice to the defendants here because we are satisfied in the case before us that the discussions that took place between the witnesses had no substantial influence on the jury verdict." *Id.* Accordingly, we have found reversible error in cases where it is impossible to tell whether the non-sequestered witness would have testified differently in a manner that would have materially affected the trial. This means that the appellee does not bear the burden to affirmatively demonstrate prejudice, as is usually the case on appeal. Nonetheless, we have also made clear that an error in non-sequestration does not warrant *per se* reversal — if the circumstances of a particular case illustrate clearly that the witness in question did not tailor his testimony, or that the witness's testimony had no substantial influence on the verdict, we may find the error harmless.

In this case, the Board argues that we can find lack of prejudice based on several factors. First, Pearson had written down the reasons for the non-renewal in letters to Kozlowski and the Board and had been deposed at length. Any tailoring of his testimony could have been brought out by contrasting it with his prior writings and deposition testimony. Second, as noted above in part II.A.3, it appears that the plaintiff was able to successfully cast doubt on much of Pearson's

testimony. This would indicate that Pearson was not able to — or simply did not — tailor his testimony so as to suck the wind from the plaintiff's case.

On the other hand, the plaintiff argues convincingly that Pearson nonetheless was able to tailor his responses to the plaintiff's rebuttal witnesses and therefore rehabilitate potentially discredited earlier testimony. When Pearson was recalled as a witness after having previously testified, defense counsel started by stating that "[y]ou've had the opportunity as you've sat [in the trial] over the last couple of days to hear the testimony of various witnesses." Defense counsel then asked Pearson to respond directly to much of the contradictory testimony that he had observed. This is precisely the situation that Rule 615 was designed to prevent. When a witness is properly sequestered, that witness loses his ability to re-characterize his testimony in light of damaging contradictory testimony by other witnesses or to explain away inconsistencies. Here, Pearson was given that opportunity. We decline to decide whether this error standing alone would warrant reversal, but conclude that the error, in combination with the other errors we identify in this opinion, substantially prejudiced Kozlowski's case.

IV.

After reviewing Kozlowski's various grounds for appeal, we have concluded that the district court committed at least four non-forfeited errors to the detriment of Kozlowski.[11] Specifically, the court erred by: (1) failing to instruct the jury that it could infer age discrimination from the falsity of the defendant's proffered reasons; (2) excluding evidence proffered by the plaintiff of prior similar alleged acts of age discrimination; (3) admitting evidence related to Kozlowski's past DUI arrests; and (4) failing to sequester Pearson, a primary defense witness, from the trial proceedings. We have identified certain of these errors that would not, standing alone, warrant reversal, and we have withheld judgment about the individual harmlessness of the

---

[11]Our analysis here does not include the district court's insertion of "because of age" into the instruction that was based on the *McDonnell Douglas prima facie* case because that error did not prejudice the plaintiff.

remaining errors. As a number of courts have recognized, however, the collective force of multiple errors can, in some instances, warrant reversal even when one or two of the errors standing alone would not. *See Frymire-Brinati v. KPMG Peat Marwick*, 2 F.3d 183, 188 (7th Cir. 1993) ("One or two of these errors might have been excused as harmless. Collectively, however, they presented the jury such a skewed picture that the verdict is unreliable and must be set aside."); *Malek v. Fed. Ins. Co.*, 994 F.2d 49, 55 (2d Cir. 1993) ("Although any one of the above evidentiary errors standing alone may have been harmless and would not mandate reversal, the cumulative effect of these errors substantially prejudiced the Maleks' case."); *Gordon Mailloux Enterprises, Inc. v. Firemen's Ins. Co. of Newark, N. J.*, 366 F.2d 740, 742 (9th Cir. 1966). *But see SEC v. Infinity Group Co.*, 212 F.3d 180, 196 (3d Cir. 2000) (rejecting cumulative error doctrine in civil context). Although we have not yet had the occasion to consider the cumulative error doctrine in the civil context, we have applied the doctrine in the criminal context. *See United States v. Martinez*, 277 F.3d 517, 532 (4th Cir. 2002). We have also rejected the notion that a different standard should apply for harmless error review in the civil context than in the criminal context. *See Taylor v. Va. Union Univ.*, 193 F.3d 219, 235 (4th Cir. 1999). Accordingly, we will now consider the cumulative effect of the errors we have identified.

An error is harmless when it does not affect the appellant's "substantial rights." *Id.* Put differently, an error is harmless when the court can say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the errors." *Id.* (quotations and citations omitted). Given the number of the errors in this case and the seriousness of at least some of those errors, such as the court's failure to sequester the defendant's main fact witness, we conclude that the cumulative effect of the errors was substantially prejudicial to Kozlowski's case. The errors affected both the evidence that the jury was permitted to consider as well as the legal standard that the jury was asked to apply to that evidence. The court's evidentiary and sequestration errors meant that the jury was unaware of probative evidence of alleged prior similar acts of discrimination; was aware of Kozlowski's irrelevant DUI arrests, which cast him in a negative light; and heard testimony from the defendant's main fact witness, Pearson, that was quite possibly tailored to meet the contrary evi-

dence of the plaintiff. In addition, the court failed to inform the jury of an important inference that the law, as has become clear only recently, permits them to draw. When we consider the trial in light of these errors, we cannot say "with fair assurance . . . that the judgment was not substantially swayed by the errors." *Id.* (quotations and citations omitted). We conclude that the errors preserved by the plaintiff and raised on appeal substantially affected his case and were not harmless.[12] Accordingly, we vacate the judgment of the district court and remand for a new trial.

*VACATED AND REMANDED*

---

[12]Because we conclude that the cumulative effect of the non-forfeited errors warrants reversal, we need not decide whether we would ever consider the effect of any forfeited errors when conducting a cumulative effect review.