John C. RISHEL Plaintiff,

v.

**NATIONWIDE MUTUAL INSURANCE CO. Defendant.**

No. 1:02 CV 00528.

United States District Court, M.D. North Carolina.

Dec. 29, 2003.

Martha Perkowski Brown, Pinto, Coates, Kyre & Brown, PLLC, Greensboro, NC, for Plaintiff.

Denis E. Jacobson, Amanda Leigh Fields, Tuggle Duggins & Meschan, P.A., Greensboro, NC, Donald R. Keller, James G. Petrie, Bricker & Eckler, Columbus, OH, for Defendant.

## MEMORANDUM OPINION

BEATY, District Judge.

## I. INTRODUCTION

This matter is currently before the Court on Defendant Nationwide Mutual Insurance Co.'s ("Defendant" or "Nationwide") Motion for Summary Judgment [Document # 23] as to Plaintiff John C. Rishel's ("Plaintiff" or "Rishel") claims that Nationwide violated the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101–12213, the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621–634, and the public policy of North Carolina as stated in the North Carolina Equal Employment Practices Act (the "NCEEPA"), North Carolina General Statutes sections 143–422.1 to –422.3. For the reasons explained below, Defendant's Motion for Summary Judgment is GRANTED and all claims asserted by Plaintiff against Defendant are hereby DISMISSED.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was employed in Nationwide's Special Investigative Unit ("SIU") from November 26, 1990, until Nationwide terminated his employment on July 2, 2001. (Rishel Dep. at 30–32.) His duties included investigating claims that Nationwide believed to be suspicious. (Rishel Dep. at 33–34.) At the time of his termination, Plaintiff was fifty-six years old and was a Special Investigator III earning $59,100 per year. (Def.'s Resp. Pl.'s Interrogatories at 1177.)

Plaintiff alleges that beginning in 1999 Defendant began harassing him on the basis of his age and disability. (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 2.) During that year, Mitch Edwards ("Edwards") became the SIU manager and, therefore, Rishel's supervisor. (*Id.* at 3.) After becoming the SIU Manager, Edwards stopped by Rishel's office and asked him about his experience as an investigator. (Rishel Dep. at 93.) During this conversation Edwards asked Rishel how old he was. (*Id.* at 94.) In addition, Rishel alleges that Edwards asked him how old he was during a later conversation. (*Id.* at 94–95.) Rishel cannot remember the specifics of the later conversation but believes it occurred in late 1999 or early 2000. (*Id.* at 94–95.)

On May 4, 1999, Rishel suffered injuries to his back and hand (*id.* at 98–99) that made it more difficult for him to perform his job duties. (*Id.* at 99.) Rishel alleges that "Edwards constantly and consistently badgered Rishel regarding his medical condition." (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 3.) Rishel believes that Edwards asked him about his back injury between seven and nineteen times. (Rishel Dep. at 100–01.) In addition, Rishel alleges that Wausan, Nationwide's workers' compensation carrier (and a subsidiary of Nationwide's parent company) accused him of filing a false workers' compensation claim (*id.* at 106) and that dealing with Wausau caused him to suffer extreme stress. (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 2.) Rishel's emotional distress caused him to undergo intensive outpatient psychological treatment. (*Id.* at 2–3.)

Beginning in 1999, Edwards no longer assigned large-loss claims to Rishel. (*Id.* at 3.) According to Defendant, the removal of Plaintiff's responsibility for large-loss claims occurred due to a reorganization of the SIU office. (Def.'s Br. Supp. Mot.

Summ. J. at 2.) According to Defendant, "[t]he large loss claims were re-assigned to fewer SIU investigators in order to establish a more consistent process regarding these investigations and to improve communication between the Claims Large Loss Unit and SIU in North Carolina." (*Id.*) Even though his responsibility for these large-loss claims was substantially reduced, Plaintiff received raises for his 1999 and 2000 performance of $4800 and $3500, respectively. (*Id.*)

In November 2000, Nationwide learned that Plaintiff had purchased a stolen tractor and ATV from Glenn Cheek, another Nationwide employee. (*Id.* at 4.) Robert Whritenour, who was investigating Cheek, then began to investigate Rishel. (*Id.*) On June 27, 2001, after completing the substantial portion of his investigation into Rishel's activities, Whritenour interviewed Rishel. (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 7.) During the interview, Whritenour impugned Rishel's professional abilities and made accusations against him. (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 7.) Rishel alleges that these accusations were based on a discriminatory animus against him based on his age and disability. (*See id.*)

Nationwide covered each of its employees, including Rishel, with a blanket fidelity bond. Therefore, it required all of its employees to be bondable. (Def.'s Br. Supp. Mot. Summ. J. at 3–4.) Defendant's Honesty and Bonding of Employee Policy ("Bonding Policy") set forth Nationwide's criteria for whether an employee was bondable under Nationwide's fidelity bond. (*Id.*) Nationwide's Bonding Committee, composed at the time of Peter Hendey and Corliss Barringer, regularly determined if employees were bondable. (*Id.* at 4–5.) On June 29, 2001, the Bonding Committee determined that because Rishel purchased property he knew or should have known

was stolen, he no longer met the bonding requirements. (Hendey Aff. at 2.) On July 2, 2001, Rishel was informed that he was not bondable and therefore he was being terminated, effective immediately. (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 7.) Because Rishel believed his termination was motivated by discriminatory reasons, he filed a charge with the EEOC. (Compl. [Document # 1] ¶ 21.) After exhausting his administrative remedies, Plaintiff filed a lawsuit in the Superior Court of Guilford County, North Carolina, on or about May 23, 2002. (Compl.) Nationwide removed the action to this Court on June 28, 2002. (Notice Removal [Document # 1].)

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is considered "material" if it "might affect the outcome of the suit under the governing law ...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Under this standard, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* As a result, the Court will only enter summary judgment in favor of the moving party when " 'the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the [nonmoving] party cannot prevail under any circumstances.' " *Campbell v. Hewitt, Coleman & Assocs.,* 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc.*

v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir.1967)).

When ruling on a summary judgment motion, the Court "view[s] the evidence in the light most favorable to the non-moving party, granting that party the benefit of all reasonable inferences." *Bailey v. Blue Cross & Blue Shield of Va.,* 67 F.3d 53, 56 (4th Cir.1995). The moving party bears the initial "burden of establishing that there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." *Catawba Indian Tribe of S.C. v. South Carolina,* 978 F.2d 1334, 1339 (4th Cir.1992). Once the moving party has met this burden, the adverse, or nonmoving, party, must set forth specific facts showing that there is a genuine issue for trial. *Id.* In so doing, the adverse party may not rest on mere allegations, denials, or unsupported assertions, but must, through affidavits or otherwise, provide evidence of a genuine dispute. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510; *Catawba Indian Tribe,* 978 F.2d at 1339. In other words, the nonmoving party must show "more than ... some metaphysical doubt as to the material facts," for the mere existence of a scintilla of evidence in support of its position is insufficient to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Catawba Indian Tribe,* 978 F.2d at 1339.

### B. Plaintiff's Federal Discrimination Claims

As discussed above, Plaintiff is suing Defendant for unlawfully terminating him in violation of the ADEA and the ADA.[1] To prove his claims, Plaintiff may

---

1. In Plaintiff's Complaint, Plaintiff alleged unlawful harassment on the basis of age and disability in violation of the ADEA and the ADA, respectively. He further seemed to al-

lege that Defendant illegally discriminated against him by removing large-loss claims from his investigatory duties. In his Memorandum in Opposition to Defendant's Motion

rely on direct evidence, indirect evidence, or a combination of both direct and indirect evidence. In this case, Plaintiff has only offered indirect evidence of discrimination. Therefore, under the traditional principles of federal employment-discrimination law, Plaintiff must use the three-step indirect method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* scheme of proof, the plaintiff must first prove, by a preponderance of the evidence, a prima facie case of discrimination. *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir.2000) (applying *McDonnell Douglas* to an ADEA claim); *Ennis v. Nat'l Ass'n of Bus & Ednc. Radio, Inc.*, 53 F.3d 55, 57–58 (4th Cir.1995) (applying *McDonnell Douglas* to an ADA claim). Once the plaintiff has established his prima facie case, the defendant must respond with evidence that it acted with a legitimate, non-discriminatory reason for its employment decision. *Stokes*, 206 F.3d at 429; *Ennis*, 53 F.3d at 58. If the defendant meets this burden of production, the presumption of discrimination created by the prima facie case vanishes, requiring the plaintiff to prove that the defendant's proffered reason is a pretext for discrimination in order to recover. *Stokes*, 206 F.3d at 429; *Ennis*, 53 F.3d at 58. In light of *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the plaintiff is no longer required to show pretext *plus* some additional evidence of discrimination. *Id.* at 148, 120 S.Ct. at 2109; *see Rowe v. Marley Co.*, 233

F.3d 825, 830 (4th Cir.2000) (applying *Reeves* ). In other words, the Court may infer the ultimate fact of discrimination merely from the falsity of the defendant's proffered explanation. *Rowe*, 233 F.3d at 830. Nevertheless, under *McDonnell Douglas*, the plaintiff at all times bears the ultimate burden of persuasion with respect to the defendant's alleged unlawful discrimination. *See Stokes*, 206 F.3d at 429; *Ennis*, 53 F.3d at 58.

■ Plaintiff argues, however, that in light of the Supreme Court's recent decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), even though he only has indirect evidence of discrimination, he is not required to prove his case under the *McDonnell Douglas* proof scheme but instead qualifies for the more favorable mixed-motive proof scheme. The starting point of a discussion of whether Plaintiff may utilize the mixed-motive proof scheme is *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In *Price Waterhouse*, a four-Justice plurality of the Supreme Court held that "when a plaintiff in a Title VII case proves that [an impermissible factor] played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the [unpermissible factor] into account." *Id.* at 258, 109 S.Ct. at 1795. Justice O'Connor concurred in the judgment, but limited the applicability of the mixed-motive burden-shifting scheme to cases "where an employee has demonstrat-

---

for Summary Judgment, however, Plaintiff appears to have abandoned his harassment claims and his claims that Defendant's removal of large-loss claims from his job responsibilities was an unlawful adverse employment action. The Court, therefore, will grant summary judgment to Defendant with respect to

Plaintiff's claims of harassment and with respect to any claims arising under Defendant's removal of Plaintiff's large-loss-claim duties. Therefore, this opinion will focus only on Plaintiff's claims that he was wrongfully terminated in violation of the ADEA, ADA, and the public policy of North Carolina.

ed by direct evidence that an illegitimate factor played a substantial role in a particular employment decision." *Id.* at 275, 109 S.Ct. at 1803 (O'Connor, J., concurring in the judgment). Partially in response to *Price Waterhouse,* two years later Congress amended Title VII by passing the Civil Rights Act of 1991, which states that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m). Under Title VII, as amended by the Civil Rights Act of 1991, once the plaintiff proves that an impermissible criterion was a motivating factor in the employer's decision, the burden shifts to the employer to prove that it would have made the same decision absent the impermissible criterion. *See* 42 U.S.C. § 2000e–5(g)(2)(B). However, even if the employer can meet this burden, it is not wholly absolved of liability, but is only entitled to a "limited affirmative defense" that restricts the plaintiff's remedies to declaratory relief, certain injunctive relief, attorney's fees, and costs. *Desert Palace,* 123 S.Ct. at 2151 (citing 42 U.S.C. § 2000e–5(g)(2)(B)).

■ In the present case, however, Rishel, unlike the plaintiff in *Price Waterhouse,* is not suing under Title VII, but is suing under the ADA and the ADEA. In *Baird v. Rose,* 192 F.3d 462 (4th Cir.1999), the Fourth Circuit Court of Appeals held "that the causation standards applicable in Title VII actions are applicable to violations of [the ADA]." *Id.* at 470. Therefore, *Price Waterhouse,* as amended by the Civil Rights Act of 1991, applies to ADA claims. *See id.*

Having enunciated the standards of proof applicable to ADA claims, this Court will now discuss the standards of proof

applicable to claims arising under the ADEA. Like Title VII and ADA claims, the Fourth Circuit has applied the *Price Waterhouse* mixed-motive scheme to ADEA cases. *See Kozlowski v. Hampton Sch. Bd.,* 77 Fed. Appx. 133, 138 (4th Cir. 2003) (stating that "a plaintiff may prevail in an age discrimination case ... [u]nder the mixed-motive framework" by "prov[ing] that age played a substantial motivating role in the defendant's decision"); *Gibson v. Henderson,* 129 F.Supp.2d 890, 900 (M.D.N.C.2001) (holding that a plaintiff with direct evidence of age discrimination could utilize the mixed-motive approach). What is unclear, however, is whether Title VII's amendments to the *Price Waterhouse* mixed-motive scheme apply to ADEA claims because the Fourth Circuit Court of Appeals has never decided whether the provisions of the Civil Rights Act of 1991 related to the mixed-motive standard of proof (i.e., 42 U.S.C. § 2000e–2(m) and § 2000e–5(g)(2)(B)) apply to claims under the ADEA. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 314 F.3d 657, 664 n. 2 (4th Cir.2003) (holding that the Fourth Circuit "has not decided whether section 107(a) of the Civil Rights Act of 1991, 42 U.S.C. § 2000e–2(m), applies to ADEA mixed-motive cases"), *reh'g en banc granted, opinion vacated,* 2003 U.S.App. LEXIS 2859 (4th Cir. Feb. 12, 2003).

■ What is clear, however, is that the *Price Waterhouse* mixed-motive scheme does apply to ADEA cases. Further, it is unnecessary for the Court to decide whether the provisions of Title VII apply to ADEA claims because, as discussed below, Plaintiff has failed to prove that age was a motivating factor in Nationwide's decision to terminate him. Because Plaintiff is unable to meet his burden to prove that his age motivated Nationwide's decision to terminate him, the burden of per-

suasion never shifts to Defendant to prove it would have made the same decision even absent a discriminatory motive. As such, the question of whether the mixed-motive standard of proof under Title VII (as opposed to *Price Waterhouse*) applies is not before this Court.

Having addressed the pre-*Desert Palace* state of the law with respect to the standards of proof for ADA and ADEA cases, the Court will now discuss whether *Desert Palace* modifies those standards of proof for ADA and ADEA cases at the summary judgment stage. Prior to the Supreme Court's June 2003 holding in *Desert Palace*, it was well-settled that the Fourth Circuit adhered to Justice O'Connor's concurring opinion in *Price Waterhouse* that unless a plaintiff could present direct evidence of discrimination, he could not take advantage of the more advantageous mixed-motive proof scheme and therefore had to rely on the *McDonnell Douglas* burden-shifting scheme. *See, e.g., Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 192 (4th Cir.2003) (holding that, prior to *Desert Palace*, the Fourth Circuit "embraced" the "heightened 'direct evidence' standard"); *Kozlowski*, 77 Fed. Appx. at 138 (holding that, prior to *Desert Palace*, direct evidence of discrimination was required for a plaintiff to qualify for the mixed-motive proof scheme); *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir.1995) (holding that to obtain a mixed-motive instruction the plaintiff must show "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision"), *abrogated by Desert Palace*, 123 S.Ct. at 2152, 2155. In *Desert Palace*, however, the Supreme Court held that "direct evidence of discrimination is not required" in order to obtain a mixed-motive jury instruction under 42 U.S.C. § 2000e–2(m). *Desert Palace*, 123 S.Ct. at 2155. In the present case, Plaintiff does not dispute that he has no direct evidence that Nationwide discriminated against him on the basis of age or disability. Nevertheless, in his Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment, Plaintiff contends that *Desert Palace* eases the burden he must overcome in order to survive Defendant's Motion for Summary Judgment. (Pl.'s Supplemental Mem. Opp. Def.'s Mot. Summ. J.) Specifically, Plaintiff argues that to survive summary judgment, "he must [only] present[ ] sufficient [as opposed to direct,] evidence from which a jury may find that his age and perceived disability were motivating factors in the decision to terminate him" (*id.* at 4) but need not prove that Defendant's stated reason for terminating him (i.e., that he was not bondable) is false. (*See id.*) Defendant contends, however, that *Desert Palace* does not apply at the summary judgment stage at all but only controls whether a plaintiff, after surviving summary judgment, may obtain a mixed-motive *jury instruction*. (Def.'s Reply Pl.'s Supplemental Mem. Opp. Def.'s Mot. Summ. J. at 2–4.) Defendant thus argues that even in light of *Desert Palace*, Plaintiff must still comply with *McDonnell Douglas*. (*Id.*)

To the extent that Defendant argues that the more favorable mixed-motive proof scheme does not apply in the context of a motion for summary judgment, Defendant's argument is in error. Prior to *Desert Palace*, decisions within the Fourth Circuit applied the mixed-motive framework when ruling on motions for summary judgment. For example, in *Bayles v. Fidelity Bank*, 44 F.Supp.2d 753 (M.D.N.C. 1998), the district court held that "[e]mployment discrimination cases involving disparate treatment fall within two categories: mixed-motive cases and pretext cases. Distinguishing between the two

categories is essential because the standard of liability is more favorable for plaintiffs in a mixed-motive case." *Id.* at 757 (citation omitted). Therefore, the district court first analyzed the plaintiff's arguments that she had presented sufficient evidence to survive summary judgment under the more favorable mixed-motive standard. *Id.* at 758. Because the court found that the plaintiff had adduced direct evidence of termination on the basis of sex, it found that she had survived summary judgment under the mixed-motive standard. *Id.* Because the plaintiff had adduced no direct evidence of her other discrimination claims, the district court then proceeded to analyze them under the *McDonnell Douglas* pretext framework. *Id.* Thus, the court's analysis in *Bayles* demonstrates that the mixed-motive standard is applicable at the summary judgment stage.

Likewise, in *Kubicko v. Ogden Logistics Services,* 181 F.3d 544 (4th Cir.1999), the court of appeals also applied the mixed-motive scheme at the summary judgment stage. The court held that the plaintiff had "proffered sufficient evidence of retaliatory animus to trigger application of the mixed-motive proof scheme ... and that genuine issues of material fact exist making summary judgment in favor of the Defendants inappropriate." *Id.* at 546 (citation omitted). In *Kubicko,* the district court had found that the plaintiff did not qualify for the mixed-motive proof scheme and therefore required the plaintiff to satisfy the *McDonnell Douglas* scheme, which he could not. *Id.* at 550. The court

of appeals reversed the district court's grant of summary judgment because it found that the plaintiff had met his burden of proof to survive summary judgment under the mixed-motive proof scheme. *Id.* at 555. *Kubicko* further demonstrates, therefore, that the Fourth Circuit Court of Appeals has applied the mixed-motive proof scheme when ruling on motions for summary judgment.

*Bayles* and *Kubicko,* however, were cases involving direct evidence of discrimination. Therefore, the *McDonnell Douglas* proof scheme was by definition inapplicable, because it sets forth a scheme of shifting burdens for plaintiffs with indirect, not direct, evidence. *See Pinchback v. Armistead Homes Corp.,* 907 F.2d 1447, 1453 (4th Cir.1990) (holding that " '[t]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.' ") (quoting *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985)).[2] In the present case, however, Plaintiff only has indirect evidence of discrimination; therefore, unless *Desert Palace* holds otherwise, the traditional *McDonnell Douglas* pretext scheme would be applicable to deciding whether Plaintiff has demonstrated a genuine issue of material fact that Defendant discriminated against him on the basis of age or disability so as to survive Defendant's Motion for Summary Judgment.

Fourth Circuit law on the effect of *Desert Palace* at the summary judgment

---

**2.** The Court notes that in *Mullen v. Princess Anne Volunteer Fire Co., Inc.,* 853 F.2d 1130 (4th Cir.1988), the Fourth Circuit in a footnote distinguished *Trans World Airlines, Inc.,* as a case that "involved an employment policy based on age which was 'discriminatory on its face,' not mere evidence tending to indicate a discriminatory motive." *Id.* at 1138 n. 2. The Fourth Circuit Court of Appeals'

discussion in *Pinchback,* however, makes no reference to any limitations on *Trans World Airlines* ' holding that *McDonnell Douglas* is inapplicable in cases involving direct evidence. This Court therefore follows *Pinchback,* which, by citing *Trans World Airlines* without utilizing the reasoning of the *Mullen* footnote, implicitly overruled footnote 2 of *Mullen.*

stage, however, is currently unclear. The relevant Fourth Circuit Court of Appeals' decisions construing *Desert Palace* deal only with its effect on jury instructions. *See Rowland,* 340 F.3d at 191–94 (holding that, in light of *Desert Palace,* the district court abused its discretion in denying plaintiff's request for a mixed-motive jury instruction); *Kozlowski,* 77 Fed. Appx. at 137–39 (finding invalid the plaintiff's argument that she should have received a mixed-motive jury instruction because she had actually received a mixed-motive instruction). *Buchanan v. Consolidated Stores Corp.,* 217 F.R.D. 178 (D.Md.2003), is the only relevant district court decision in this circuit citing *Desert Palace. Id.* at 194. In deciding a motion for summary judgment on the plaintiff's 42 U.S.C. § 1981 claim, the court merely cited *Desert Palace* for the proposition that "Plaintiffs still must prove that race was a motivating factor in ... [the employer's] decisions." *Id.* (citing *Desert Palace,* 123 S.Ct. at 2152).

Because of the absence of on-point Fourth Circuit case law, this Court must look to other circuits for guidance in its application of *Desert Palace* to this case. At the present time, only the First, Eighth, and Ninth Circuit Courts of Appeals have considered *Desert Palace* in the context of a motion for summary judgment. Each of these circuits applied *Desert Palace* at the summary judgment stage. The Eighth Circuit, however, in *Allen v. City of Pocahontas, Arkansas,* 340 F.3d 551 (8th Cir.2003), refused to decide "whether the Supreme Court's refocus [in *Desert Palace* ] on the statutory language of the Civil Rights Act of 1991 alters the burden-shifting analysis of *McDonnell Douglas* " because the court found that the plaintiff had "provided no evidence, direct or circumstantial, from which a reasonable jury could logically infer that age or gender was a motivating factor in her termi-

nation." *Id.* at 557 n. 5. In *Trammel v. Simmons First Bank of Searcy,* 345 F.3d 611 (8th Cir.2003), the Eighth Circuit Court of Appeals likewise held that *Desert Palace* did not help the plaintiff in that case because "he ... presented insufficient evidence to support a finding that his age was a 'motivating factor' in the decision to discharge him." *Id.* at 615.

The First Circuit went further in its analysis of *Desert Palace* 's applicability at the summary judgment stage, holding that *Desert Palace* allowed the plaintiff to prevail in a mixed-motive ADEA case without direct evidence. *See Estades–Negroni v. Assocs. Corp. of N. Am.,* 345 F.3d 25, 30 (1st Cir.2003). The court of appeals reasoned that "[i]n *Desert Palace,* ... the Supreme Court held that direct evidence is not required to prove employment discrimination in a mixed-motive case." *Id.* (internal quotation marks omitted) (citation omitted). The court then proceeded to analyze the plaintiff's claims under both the mixed-motive and the traditional *McDonnell Douglas* pretext analyses. *Id.* at 30–32. Likewise, in *Stegall v. Citadel Broadcasting Co.,* No. 02–35399, 2003 WL 22845422 (9th Cir. Dec.2, 2003), the Ninth Circuit Court of Appeals applied *Desert Palace* at the summary judgment stage and analyzed the plaintiff's case under both the mixed-motive and the pretext theories. *Id.* at *5–6.

In addition, the Court finds persuasive the reasoning of the district court in *Dunbar v. Pepsi–Cola General Bottlers of Iowa, Inc.,* 285 F.Supp.2d 1180 (N.D.Iowa 2003). In the most thorough opinion to date evaluating the effect of *Desert Palace* at the summary judgment stage, the Northern District of Iowa ultimately concluded that *Desert Palace* does apply at the summary judgment stage. The court correctly noted that in *Desert Palace*

the Supreme Court held, "In order to obtain [a mixed-motive] instruction under § 2000e–2(m), a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" This "reasonable jury" standard is precisely the same as the standard for defeating a motion for summary judgment—i.e., whether the plaintiff has presented evidence "such that a reasonable jury could return a verdict for the nonmoving party."

*Dunbar*, 285 F.Supp.2d at 1195 (emphasis omitted) (citations omitted).

■ Further, the district court in *Dunbar* persuasively answered the question facing this Court, that is, how to apply both the mixed-motive and pretext analyses simultaneously to Plaintiff's case. This Court finds persuasive the *Dunbar* court's reasoning that the Court must only modify the final stage of the *McDonnell Douglas* scheme to accommodate *Desert Palace*, by framing the final stage "in terms of whether the plaintiff can meet his or her 'ultimate burden' to prove intentional discrimination, rather than in terms of whether the plaintiff can prove 'pretext.'" *Id.* at 1197. Therefore, under this modified *McDonnell*

*Douglas* scheme, a plaintiff must still demonstrate a prima facie case of discrimination and the defendant must articulate a legitimate, nondiscriminatory reason for its action. *See id.* at 1197–98. To ultimately prevail, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive alternative)." *Id.* at 1198 (emphasis omitted) (citations omitted).[3]

The Court further finds *Dunbar*'s application of *Desert Palace* consistent with prior Fourth Circuit law. As the Fourth Circuit Court of Appeals apply stated in *Russell v. Microdyne Corp.*, 65 F.3d 1229 (4th Cir.1995), "[w]hat is notable about both the 'single motive' indirect cases under *McDonnell Douglas* and the 'mixed-motive' cases under *Price Waterhouse* is that, in both instances, the parties challenge the underlying motivation or motivations for the disputed employment action." *Id.* at 1237.[4] The court went on to note that "the analytic differences between these two types of cases is razor-thin,

3. An issue not addressed by Plaintiff or Defendant is whether *Desert Palace*, a Title VII case, should even apply to cases arising under the ADEA. This Court notes that the Fourth Circuit Court of Appeals has not decided this issue. *See Kozlowski*, 77 Fed. Appx. at 138 (holding that "[i]n this case we are not asked to address—and do not address—whether *Desert Palace*, a Title VII case, also applies to age discrimination cases under the ADEA"). Therefore, this Court will assume, without deciding, that *Desert Palace* applies to age discrimination cases under the ADEA.

4. A potential argument Defendant fails to advance is that this case should be classified as a single-motive case so as to preclude the Court from applying *Dunbar*'s modified

*McDonnell Douglas* analysis to Plaintiff's claims. In *Desert Palace*, the Supreme Court declined to decide whether 42 U.S.C. § 2000e–2(m) "applies outside of the mixed-motive context." *Desert Palace*, 123 S.Ct. at 2151 n. 1. As discussed above, this provision of Title VII states, in pertinent part, that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." Thus, it is an open question in the Fourth Circuit whether the motivating-factor analysis even applies to so-called single-motive cases. *See Rowland*, 340 F.3d at 192 n. 4 (citing *Desert Palace*, 123 S.Ct. at 2151 n. 1) (refusing to decide wheth-

which has made the area a particularly difficult one for the courts . . . ." *Id.* Thus, in applying *Desert Palace* at the summary judgment stage, this Court recognizes, under either a mixed-motive or a pretext theory, that to ultimately prevail, Plaintiff must prove that Defendant's decision to terminate him was motivated by an illegitimate criterion.

In summary, therefore, the Court agrees in part with both Plaintiff and Defendant with respect to the application of *Desert Palace*. With respect to Plaintiff's arguments regarding the application of *Desert Palace* at the summary judgment stage, the Court agrees with Plaintiff to the extent that in order for Plaintiff to survive Defendant's Motion for Summary Judgment, Plaintiff need only present sufficient evidence "from which a reasonable jury could find that the decision to terminate Plaintiff was motivated" by discriminatory reasons. (*See* Pl.'s Supplemental Mem. Opp. Def.'s Mot. Summ. J. at 9.) With respect to Defendant's arguments regarding *Desert Palace*, the Court agrees with Defendant to the extent that *Desert Palace* does not "abrogate [*McDonnell Douglas* '] well-established analytical framework." (Def.'s Reply Pl.'s Supplemental Mem. Opp. Def.'s Mot. Summ. J. at 3.) Following the *Dunbar* court's reasoning, the Court will analyze Plaintiff's claims under the

modified *McDonnell Douglas* proof scheme as articulated in *Dunbar.* Under the modified *McDonnell Douglas* scheme, if Plaintiff can demonstrate that there is a genuine issue of material fact that his termination was motivated by an impermissible criterion, he will survive Defendant's Motion for Summary Judgment. Likewise, Plaintiff can also defeat Defendant's Motion for Summary Judgment by demonstrating a genuine issue of material fact that Nationwide's proffered reason for terminating him is pretextual.

With the above legal principles in mind, the Court will now analyze whether Plaintiff has presented sufficient evidence to create a genuine issue of material fact that Nationwide discriminated against him on the basis of disability or age. The Court will first analyze whether Plaintiff has demonstrated that there is a genuine issue of material fact that Defendant discriminated against him on the basis of disability. The Court will then analyze Plaintiff's second claim in order to determine whether Plaintiff has demonstrated that there is a genuine issue of material fact that Defendant discriminated against him on the basis of age.

#### 1. Plaintiff's ADA Claim

■ As discussed above, under the *McDonnell Douglas* indirect-proof scheme,

---

er 42 U.S.C. § 2000e–2(m) applies outside of the mixed-motive context). In *Russell v. Microdyne Corp.,* however, the Fourth Circuit Court of Appeals noted that in both single-motive and direct-motive cases, "the parties challenge the underlying motivation or motivations for the disputed employment action." *Russell,* 65 F.3d at 1237. Therefore, assuming that Plaintiff's case were a single-motive case, that is, that Defendant's termination of Plaintiff was wholly motivated by an unlawful reason, it is an open question in this circuit whether the motivating-factor analysis would apply. This Court will therefore, assume, without deciding, that the motivating-factor analysis would apply even if Plaintiff's case is

a single-motive case, and the Court will therefore use the modified *McDonnell Douglas* analysis to analyze Plaintiff's claims. As discussed more fully above, as in *Dunbar,* under the modified *McDonnell Douglas* scheme, Plaintiff must first demonstrate a prima facie case of discrimination. If he carries this burden, the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination. If Defendant carries this burden, Plaintiff must then prove either that his termination was motivated by an impermissible criterion or that Defendant's articulated reason for terminating him is a pretext for unlawful discrimination.

as modified by *Desert Palace* and applied by *Dunbar*, to prevail in his claim under the ADA, Plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination on the basis of disability. *See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir.1995). To establish a prima facie case of discrimination, Plaintiff must prove the following basic elements:

(1) he is within the ADA's protected class;

(2) he was discharged;

(3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and

(4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.

*Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir.2001) (citing *Ennis*, 53 F.3d at 58).

■ The Court must first examine, therefore, whether Rishel is within the ADA's protected class. *See id.* To be within the protected class, the individual must be disabled within the meaning of the ADA. An individual is disabled under the ADA if he has "(A) a physical or mental impairment that substantially limits one or more of [his] major life activities . . .; (B) [has] a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(2). Rishel does not contend that he was actually disabled at the time he was fired; instead, he argues that Nationwide regarded him as being disabled under § 12102(2)(C). (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 18–19.) "An individual is regarded as being disabled if he is regarded or perceived, albeit erroneously, as having an impairment that substantially limits one or more of his major life activities." *Haulbrook*, 252 F.3d at 703 (citing 42 U.S.C. § 12102(2)). A

person "may be 'regarded as' disabled under the ADA if either '(1) [his employer] mistakenly believes that [he] has a physical impairment that substantially limits one or more major life activities, or (2) [his employer] believes that an actual, nonlimiting impairment substantially limits one or more major life activities.'" *Id.* (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 2149–50, 144 L.Ed.2d 450 (1999)). "The fact that an employer is aware of an employee's impairment, without more, is 'insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action.'" *Id.* (quoting *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir.1996)).

■ In this case, Plaintiff suffered a back injury while on the job. (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 2, 18 n.8.) He also alleges that he suffered severe emotional distress from dealing with Wausau, Nationwide's workers' compensation carrier, in trying to get his back injury covered by workers' compensation insurance. (*Id.* at 18 n. 9.) Plaintiff therefore argues that, based on his back injury and his mental condition, Nationwide regarded him as having physical and mental impairments "that substantially limited the major life activity of working." (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 18.) To prevail on his claim that Nationwide regarded him as being disabled in the major life activity of working, Plaintiff must prove that Nationwide "perceive[d] him as being disqualified from a broad variety of jobs." *See Haulbrook*, 252 F.3d at 704 (citing *Duncan v. Wis. Dep't of Health & Family Servs.*, 166 F.3d 930, 935 (7th Cir.1999)). Plaintiff proffers the following evidence to support his claim that Nationwide regarded him as disabled: (1) Edwards knew Rishel had suffered a back injury and had suffered severe stress from dealing with Wausau;

(2) Edwards "constantly interrogated him" about his back injury; (3) Rishel was removed from large-loss claims after he returned to work; and (4) less-experienced investigators continued to handle large-loss claims. (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 18–19.)

Here, however, Plaintiff's evidence that Nationwide regarded Plaintiff as disabled is insufficient to withstand Defendant's Motion for Summary Judgment because this evidence fails to raise a genuine issue of material fact that Defendant "perceive[d] him as being disqualified from a broad variety of jobs." Edwards' inquiries about Plaintiff's condition do not indicate that he regarded Plaintiff as being substantially limited in performing a broad variety of jobs. At most, Edwards' inquiries might indicate a belief on the part of Nationwide that Plaintiff was unable to perform his duties as an SIU Investigator III handling large-loss claims. However, the undisputed evidence is clear that after Rishel's back injury and mental problems, Nationwide did not regard Plaintiff as being disabled. Plaintiff's argument that Nationwide only allowed him to work on small claims undermines his argument that Nationwide regarded him as disabled because it demonstrates that Nationwide actually still regarded him as being able to perform his duties as an SIU Investigator. *See Dean v. Philip Morris USA Inc.,* No. 1:02CV149, 2003 WL 21754998, at *4 (M.D.N.C. July 29, 2003) (holding that an employer's reassignment of the plaintiff, a manufacturing worker, into "a job within the broad category of manufacturing jobs, [made] it . . . clear that Defendant did not regard Plaintiff as unable to perform that broad category of jobs"). By Plaintiff's own admission, Nationwide continued to give him favorable evaluations and raises during this period of time. (Rishel Dep. at 90–92, 270–72.) Thus, Nationwide's removal of large-loss claims from Plaintiff,

whether or not part of a legitimate reorganization of the SIU, is not evidence that Nationwide regarded him as being disabled because Nationwide did not exclude Plaintiff from a broad class of jobs. Instead, Nationwide continued to employ Plaintiff as an SIU investigator but just not on large-loss claims. Therefore, even if Defendant's claimed reasons for reassigning Plaintiff are false, that is, that Defendant actually believed that Rishel was unable to handle large-loss claims because of some physical or mental impairment, there is still no evidence that Defendant regarded Plaintiff as disabled in the major life activity of working because Defendant continued to employ Plaintiff and increase his salary even after it removed large-loss claims from his job responsibilities.

Plaintiff further argues that Whritenour demonstrated "animus based on Plaintiff's perceived disability" when he interrogated him. (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 19.) Plaintiff admitted in his deposition, however, that what Whritenour said when Plaintiff asked Whritenour if he knew about Plaintiff's "disability" was that "he (Whritenour) knew all about me." (Rishel Dep. at 121.) At most, this evidence shows that Whritenour was aware of Plaintiff's prior medical problems. It does not, however, show that Whritenour erroneously regarded Plaintiff as being disabled.

Taking the evidence in the light most favorable to Plaintiff and drawing all inferences therefrom in his favor, Plaintiff still has not demonstrated a genuine issue of material fact that Nationwide regarded him as being disabled in the major life activity of working, that is, Plaintiff has not shown that Nationwide regarded Plaintiff as being unable to perform a broad class of jobs. Plaintiff is therefore unable to make out a prima facie case of disability

discrimination. As discussed above, even in light of *Desert Palace*'s modifications to the *McDonnell Douglas* burden-shifting scheme, to ultimately prevail Plaintiff must still make out a prima facie case of discrimination. Because Plaintiff cannot carry this burden, the burden of production never shifts to Nationwide to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff. In summary, therefore, because Plaintiff is unable to prove that Defendant regarded him as disabled, he is unable to carry his ultimate burden of persuasion that Defendant discriminated against him in violation of the ADA. The Court will therefore grant Defendant's Motion for Summary Judgment with respect to Plaintiff's ADA claim.

### 2. Plaintiff's ADEA Claim

Nationwide has also moved for summary judgment with respect to Plaintiff's claim for age discrimination under the ADEA. The ADEA provides, in pertinent part, that it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age ...." 29 U.S.C. § 623(a)(1). The ADEA further provides that its prohibitions serve to protect only those individuals who are at least forty years of age. *Id.* § 631(a).

### a. Prima Facie Case of Age Discrimination

■ As discussed above, under the *McDonnell Douglas* indirect-proof scheme, as modified by *Desert Palace* and applied by *Dunbar*, in order to defeat Defendant's Motion for Summary Judgment, Plaintiff must first prove, by a preponderance of the evidence, that he can show a prima facie case of discrimination on the basis of

age. *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir.2000). To prove his prima facie case, Plaintiff must establish the following four basic elements:

1) that [he] is a member of the protected age group, that is, at least forty years of age;

2) that [he] was discharged or demoted from [his] job;

3) that [he] was performing [his] job at a level that met [his] employer's legitimate expectations; and

4) following [his] termination, [he] was replaced by a substantially younger employee.

*Alderman v. Inmar at Enters., Inc.*, 201 F.Supp.2d 532, 541 (M.D.N.C.2002).

■ Here it is uncontested that Plaintiff has satisfied elements one, two, and four of his prima facie case. Defendant terminated Plaintiff when he was fifty-six years old. (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 10.) In addition, Defendant replaced Plaintiff with an employee twenty-five years younger than Plaintiff. (*Id.*) The issue, therefore, is whether Plaintiff was performing his job at a level that met Nationwide's legitimate expectations. Defendant argues that Plaintiff cannot prove that he was meeting his employer's legitimate expectations because he was not bondable. (Def.'s Br. Supp. Mot. Summ. J. at 15–16.) Plaintiff counters that he has presented substantial evidence of his qualifications. (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 10.) The Court agrees with Plaintiff that he has satisfied his burden to show that he was qualified. While Plaintiff was employed with Nationwide, he received recognition and awards for his good performance. (*Id.*) His performance evaluations demonstrated that he was performing his job requirements at a level that met or exceeded his employer's expectations. (*Id.*) As the Supreme Court held

in *Burdine*, "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Rishel has therefore satisfied the "relatively easy test" of showing that he was performing up to Nationwide's legitimate expectations. *See Young v. Lehman*, 748 F.2d 194, 197 (4th Cir.1984).

Defendant cites two cases to support its argument that Plaintiff has failed to show that he was qualified for the position. In each instance, Defendant misreads these cases. Defendant first cites *Beall v. Abbott Laboratories*, 130 F.3d 614 (4th Cir. 1997), for the proposition that " '[a]n employer is free to set its own performance standards, provided such standards are not a "mask" for discrimination.' " (Def.'s Reply Br. Supp. Def.'s Mot. Summ. J. at 3 (quoting *Beall*, 130 F.3d at 619).) Defendant has taken *Beall*'s reasoning out of context. The *Beall* court made this statement in its analysis of whether the plaintiff had shown pretext; the court assumed, arguendo, that the plaintiff had satisfied her prima facie case. *Beall*, 130 F.3d at 619. Therefore, the court's statement in *Beall* is inapposite to a determination of whether Rishel has satisfied his prima facie case of discrimination. Defendant also cites *Williams v. PPG Industries, Inc.*, No. 1:01CV00459, 2002 U.S. Dist. LEXIS 22282 (M.D.N.C. July 16, 2002), *aff'd per curiam*, 50 Fed. Appx. 118 (4th Cir.2002). (Def.'s Reply Br. Supp. Mot. Summ. J. at 3 (citing *Williams*).) In *Williams*, the plaintiff believed that he had passed a test that would help qualify him for a promotion. After learning that he failed the test, he alleged that the defendant had failed him because of discriminatory animus. The court in *Williams* found that the plaintiff could not show that he was qualified. *Id.* at *11–12. *Williams*, however, is distinguishable from the present case. The plaintiff in *Williams* produced no evidence that he was qualified for the position. *Id.* Although he subjectively believed he had passed the test, he adduced no evidence that he had. *Id.* Further, he even conceded that if he had not passed the test, he was not qualified. *Id.* at 12. Here, Rishel presents objective evidence of his qualifications as an SIU investigator. Thus, for the purpose of establishing a prima facie case of age discrimination, Plaintiff indeed has raised a genuine dispute as to whether he was meeting his employer's legitimate expectations.

b. Nationwide's Legitimate, Nondiscriminatory Reason for Rishel's Termination

■■■ Because Plaintiff has established a prima facie case of age (but not disability) discrimination, the burden shifts to Nationwide to articulate a legitimate, nondiscriminatory reason for terminating him. Nationwide's nondiscriminatory reason for terminating Rishel is that Rishel was not bondable. (Def.'s Br. Supp. Mot. Summ. J. at 18–19.) Nationwide has produced sufficient evidence to meet its burden of production that Rishel was terminated for not meeting Nationwide's bonding requirements. (*See id.*) This evidence includes the following: (1) all Nationwide employees are required to be bonded, (2) Rishel was no longer bondable because he received stolen merchandise, and (3) Rishel was terminated for not being bondable. (*Id.*) According to Defendant, Nationwide requires all its employees to be bondable because it "employs individuals that process large amounts of money regarding insurance premiums and claims, and investment funds . . . ." (Hendey Aff. at 1–2.) Failure to meet the requirements of a fidelity bond is a legitimate, nondiscriminatory reason for Rishel's termination.

Therefore, Nationwide has met its burden of production.

### c. Rishel's Ultimate Burden of Persuasion

Because Nationwide has produced evidence of a legitimate, nondiscriminatory reason for terminating Rishel, the question before this Court is whether Rishel presents evidence either "that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive alternative)" or "that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative) ...." *See Dunbar,* 285 F.Supp.2d 1180, 1198 (N.D.Iowa 2003) (emphasis omitted). The Court will first examine, under the mixed-motive alternative, whether Rishel has demonstrated that unlawful discriminatory animus motivated Nationwide's decision to terminate him. The Court will then examine, under the pretext alternative, whether Rishel has demonstrated that Nationwide's reason for terminating Rishel was a pretext for unlawful discrimination on the basis of age.

### (1) Mixed–Motive Alternative

█ Under the mixed-motive proof scheme, Plaintiff's evidence that the Bonding Committee's decision to terminate him was motivated by age-based bias consists of Edwards' questions about Plaintiff's age and Whritenour's "references to Plaintiff's age when he referred to Plaintiff's experience." (Pl.'s Supplemental Mem. Opp.

Def.'s Mot. Summ. J. at 5.)[5] Plaintiff thus seems to concede that Peter Hendey and Corliss Barringer, the two members of the Bonding Committee who ultimately determined that Plaintiff was not bondable, did not even know Plaintiff's age. The only evidence Plaintiff presents that either member of the Bonding Committee knew Plaintiff's age was Hendey's admission "that he had access to a computer system that would have provided him with Rishel's date of birth." (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 16 n.7.) Even if this evidence supports an inference that Hendey knew Plaintiff's age, there is no evidence he was motivated to terminate Rishel because of illegal discriminatory animus against Rishel.

Plaintiff nevertheless seeks to impute Edwards' and Whritenour's alleged age-based animus to the Bonding Committee's decision to terminate him. Plaintiff argues that Edwards' age-based animus "influenced" Whritenour. (*Id.* at 15.) He further argues that Whritenour was motivated by discriminatory animus against Plaintiff and he "had substantial influence over the employment decision in that he knew that his reports would be the only thing considered by the Bonding Committee ...." (*Id.* at 16.) Plaintiff correctly notes that most circuits "have found that a lack of bias in the ultimate decisionmaker [i.e., the Bonding Committee] cannot shield the employer from liability if the employment decision was tainted by the bias of a subordinate." (*Id.*) In a recent case, the Fourth Circuit Court of Appeals

---

5. Defendant contends that in Plaintiff's Supplemental Memorandum, Plaintiff has exceeded the scope of this Court's July 23, 2003 Order [Document # 33], which expressly allowed "Plaintiff leave to file a supplemental memorandum on the specific issue of the holding in *Desert Palace, Inc. v. Costa* and any implication it may have in the present matter." To facilitate resolution on the merits, the Court will liberally construe its Order to encompass the arguments and evidence presented by Plaintiff in his Supplemental Memorandum. Because Defendant has fully briefed all issues and addressed the alleged new evidence that Plaintiff has presented in his Supplemental Memorandum, Defendant will not be prejudiced by the Court fully considering Plaintiff's Supplemental Memorandum.

held "that a subordinate is a decisionmaker for *Price Waterhouse* purposes if he has a substantial influence on the employment decision." *Hill v. Lockheed Martin Logistics Mgmt.*, 314 F.3d 657, 670 (4th Cir. 2003), *reh'g en banc granted, opinion vacated,* 314 F.3d 657, 2003 U.S.App. LEXIS 2859 (4th Cir. Feb. 12, 2003). The dissent in *Hill* argued that the appropriate standard is whether "the subordinate was the one 'principally responsible' for, or the 'actual decisionmaker' behind, the plaintiff's termination." *Id.* at 683 (Traxler, J., dissenting) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151–52, 120 S.Ct. 2097, 2110–11, 147 L.Ed.2d 105 (2000)). Because the opinion in *Hill* was vacated for rehearing *en banc* by the Fourth Circuit Court of Appeals, it is clear that the Fourth Circuit has not yet decided the appropriate standard for determining when "a subordinate is a decisionmaker for *Price Waterhouse* purposes."

This Court, therefore, will assume, without deciding, that Nationwide cannot shield itself from Whritenour's alleged bias. Plaintiff must still prove, however, that Whritenour was motivated by an impermissible discriminatory animus against Rishel. Plaintiff has not carried his burden. Plaintiff's evidence of Whritenour's bias against Rishel only consists of the following: (1) Whritenour knew Rishel's age; (2) Whritenour continually mentioned Rishel's experience during his interview of Rishel; and (3) "Whritenour may have also been influenced by the animus of Rishel's supervisors, Edwards and Kearns." (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 15.) Rather than demonstrating Whritenour's aged-based bias, the Court finds that the evidence demonstrates that, at worst, Whritenour was an overzealous investigator who was angry at Rishel for withholding information from him. Plaintiff even concedes that "[s]olely because Rishel had not provided ... information [about the

stolen property he purchased] to Whritenour, but had provided it instead to law enforcement, Whritenour requested that an investigation into Rishel be initiated." (*Id.* at 13 (citing Whritenour Dep. at 118–20).) The only actual evidence of Whritenour's age-based bias against Plaintiff is Whritenour's references to Plaintiff's "experience" when Whritenour interviewed Plaintiff. Whritenour referred to Plaintiff's experience while he was aggressively questioning Plaintiff regarding his purchase of stolen property. This Court agrees with Defendant that no reasonable jury would construe these statements as demonstrating bias on the basis of age. Plaintiff conceded in his deposition that Whritenour never referred to his age. (*See* Rishel Dep. at 97.) Plaintiff's own characterization of the interview shows that Whritenour was merely an aggressive investigator, not someone motivated by age-based animus. When asked on what basis Whritenour was harassing him, Rishel replied, "Oh, I think that he was harassing me all the way around. He was trying to intimidate me and anything else that you could think of." (*Id.*) But when specifically asked if Whritenour harassed him on the basis of his age, Defendant replied that "I don't know that he was trying to harass me based on my age, no." (*Id.*)

Plaintiff's statement that "there is evidence that Whritenour may have also been influenced by the animus of Rishel's supervisors, Edwards and Kearns," is unsupported by the record. First, Plaintiff offers no evidence at all of Kearns' alleged age-based animus. With respect to Edwards' alleged age-based animus, Plaintiff contends that, on two occasions, Edwards asked Plaintiff his age. (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 15.) However, these questions are too isolated and ambiguous to demonstrate discriminatory animus, especially given that Edwards

made them over a year before Plaintiff was terminated. *See Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 608 (4th Cir.1999) (holding that "to prove discriminatory animus, the derogatory remark cannot be stray or isolated and '[u]nless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of [discrimination].'" (alteration in original) (quoting *McCarthy v. Kemper Life Ins. Cos.,* 924 F.2d 683, 686 (7th Cir.1991))). Further, even if Edwards or Kearns did harbor age-based bias against Plaintiff, Plaintiff's attempt to link the age-based bias of Edwards or Kearns to Whritenour is also unsupported by the record. While Plaintiff notes that Whritenour admitted to "coordinating with Edwards and Kearns during the entire investigation," he produces no evidence to demonstrate that Edwards' and Kearns' alleged age-based animus affected Whritenour's investigation of Plaintiff.

Plaintiff further argues that "in the two years surrounding Plaintiff's termination, ninety-two employees were terminated for violating Defendant's Bonding Policy [and]... Plaintiff was the oldest and the only one terminated for suspected involvement in theft unrelated to his employment or position where there was no criminal arrest or conviction." (Pl.'s Supplemental Mem. Supp. Mot. Summ. J. at 6.) As Defendant correctly notes, however, "[t]o properly establish that Plaintiff was treated differently than similarly situated employees, Plaintiff must show that those employees violated Nationwide's Bonding Policy, but were *not* terminated." (Def.'s Reply Pl.'s Supplemental Mem. Opp. Def.'s Mot. Summ. J. at 6.) All Plaintiff's evidence shows is that Nationwide uniformly requires all employees to meet the requirements of its Bonding Policy, and it terminates all those who do not. Therefore, Plaintiff has not presented sufficient

evidence to create a genuine issue of material fact that Nationwide's decision to terminate him was motivated by unlawful age-based bias as opposed to the nondiscriminatory reason that Plaintiff was not bondable.

(2) Pretext Alternative

■■■ Because Plaintiff cannot carry his ultimate burden of persuasion under the mixed-motive alternative to the modified *McDonnell Douglas* proof scheme, the Court will now determine whether Rishel's can carry his burden under the pretext alternative, that is, whether Rishel has proffered sufficient evidence to show that Nationwide's articulated reason (i.e., that he was not bondable) is a pretext for unlawful discrimination. In evaluating whether Rishel has demonstrated a genuine issue of material fact that Nationwide's articulated reason for terminating him is pretextual, the questions for the Court are whether Rishel "presents evidence to discredit [Nationwide's] proffered nondiscriminatory reason and, if so, whether it leads to the inference that a likely alternative explanation is purposeful discrimination." *Dugan v. Albemarle County Sch. Bd.,* 293 F.3d 716, 722 (4th Cir.2002). As stated above, the Supreme Court in *Reeves* held that the ultimate fact of discrimination may be inferred merely from the falsity of Defendant's proffered explanation. In construing *Reeves,* the Fourth Circuit Court of Appeals has stated:

> "[W]hen a plaintiff establishes a prima facie employment discrimination case and that his employer's explanation is pretextual, this does not automatically create a jury question, but it may do so. Even when a plaintiff demonstrates a prima facie case and pretext, his claim should not be submitted to a jury if there is evidence that precludes a finding of discrimination, that is if 'no ra-

tional factfinder could conclude that the action was discriminatory.' "

*Rowe v. Marley Co.,* 233 F.3d 825, 830 (4th Cir.2000) (emphasis omitted) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000)).

Here, Plaintiff has presented insufficient evidence of pretext. Plaintiff engages in a lengthy criticism of Defendant's bonding policy, but this critique is not controlling on the issue to be decided by the Court. The Fourth Circuit Court of Appeals has held that "[i]t is not [the Court's] province to decide whether the reason [for the adverse employment action] was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's [adverse employment action]." *Dugan,* 293 F.3d at 722 (last alteration in original) (internal quotations omitted). Specifically, Plaintiff argues that the provisions of the fidelity bond do not require Nationwide to bond employees such as Plaintiff who do not have checkwriting authority. (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 11, 14.) While this may be true, it does not demonstrate that Nationwide's bonding of Plaintiff was a pretext for discrimination. As discussed more fully above, Plaintiff offers no evidence whatsoever of exceptions to the requirement that all employees be bondable. Nationwide's requirement that all employees be bondable is a legitimate business requirement that this Court may not disturb, particularly where Plaintiff has failed to show that Nationwide does not consistently enforce its bonding policy.

Plaintiff further argues that the process Nationwide used to determine whether Rishel and Nationwide's other employees were bondable is arbitrary. (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 12–15.) Plaintiff has presented substantial evidence in support of his argument that Nationwide's decision to terminate him for not being bondable was arbitrary, but, as discussed above, this evidence is not controlling on the Court's decision because it fails to demonstrate that Nationwide's articulated reason for terminating Plaintiff (i.e., that he was not bondable) is a pretext for unlawful discrimination. Plaintiff argues that Whritenour was influenced by age-based animus that infected the Bonding Committee's decision. (*Id.* at 15–16.) As discussed above, there is insufficient evidence to create a genuine issue of material fact that Whritenour, the person whom Plaintiff asserts was truly responsible for his termination, was motivated by age-based animus. Further, there is insufficient evidence that Whritenour's reasons for determining that Plaintiff had received stolen property were a pretext for discrimination. For the foregoing reasons, therefore, Plaintiff has failed to create a genuine issue of material fact that Nationwide's proffered reason for terminating him (i.e., that he was not bondable) is a pretext for unlawful discrimination.

Because Plaintiff's evidence fails, as a matter of law, to create a genuine issue of material fact—under either the modified *McDonnell Douglas* scheme's mixed-motive alternative or pretext alternative—that Nationwide discriminated against him on the basis of his age, the Court will grant Defendant's Motion for Summary Judgment with respect to Plaintiff's claim of age discrimination under the ADEA.

C. Wrongful Discharge Under North Carolina Law

Plaintiff finally contends that his termination on the basis of age and/or disability violates the public policy of North Carolina as articulated in the North Carolina Equal Employment Practices Act. N.C. Gen.Stat. §§ 143–422.1 to –422.3. Section 143–422.2 states that "[i]t is the public policy of this State to protect and safeguard the right

and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of ... age ... or handicap by employers which regularly employ 15 or more employees." Defendant does not dispute that the North Carolina courts have recognized wrongful-discharge claims arising out of claims of age and disability discrimination. It contends, however, that because it is entitled to summary judgment on Plaintiff's federal age and disability discrimination claims, it is also entitled to summary judgment on Plaintiff's state-law claims, which are also based upon allegations of wrongful discharge on the basis of age and disability. (Def.'s Br. Supp. Mot. Summ. J. at 19–20.) Plaintiff argues in response that "Rishel's termination on the basis of his age and handicap violated the public policy of [North Carolina]." (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 20.) The Court will first consider Plaintiff's wrongful-discharge claim on the basis of age and then consider his wrongful-discharge claim on the basis of disability.

1. Wrongful Discharge on the Basis of Age

■ When considering a wrongful-discharge claim on the basis of age under North Carolina law, this Court has previously held that it "should apply the same standards that apply under the ADEA." *Alderman v. Inmar Enters., Inc.*, 201 F.Supp.2d 532, 546 (M.D.N.C.2002). Therefore, because Plaintiff's ADEA claim fails, his claim for wrongful discharge on the basis of unlawful age discrimination also fails.

2. Wrongful Discharge on the Basis of Disability

■ In determining whether Plaintiff was terminated because he was regarded as disabled under section 143–422.2, how-

ever, the Court should be guided by the provisions of the North Carolina Persons with Disabilities Protection Act ("NCPDPA"). *See* N.C. Gen.Stat. §§ 168A–1 to –12; *Simmons v. Chemol Corp.*, 137 N.C.App. 319, 322–23, 528 S.E.2d 368, 370–71 (2000) (holding that the definition of "handicap" in the NCEEPA is found in the NCPDPA); *McCullough v. Branch Banking & Trust Co.*, 136 N.C.App. 340, 347–48, 524 S.E.2d 569, 574 (2000) (same). Under the NCPDPA, a " '[p]erson with a disability' means any person who (i) has a physical or mental impairment which substantially limits one or more major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." N.C. Gen.Stat. § 168A–3(7a). The term "[p]hysical or mental impairment" in this subdivision, "excludes (A) sexual preferences; (B) active alcoholism or drug addiction or abuse; and (C) any disorder, condition or disfigurement which is temporary in nature leaving no residual impairment." *Id.* § 168A–3(7a)a. As with his claim under the ADA, Rishel cannot prove under the NCPDPA that he was regarded as having "a physical or mental impairment which substantially limits one or more major life activities." Therefore, because Plaintiff cannot show that he was regarded as disabled under North Carolina law, his wrongful-discharge claim on the basis of a perceived disability also must fail.

For the foregoing reasons, therefore, the Court will also grant Defendant's Motion for Summary Judgment as to Plaintiff's state-law claims for wrongful discharge in violation of public policy.

IV. CONCLUSION

For the reasons discussed above, the Court believes that Plaintiff has failed to demonstrate genuine issues of material fact with respect to his claims of discrimi-

nation under the ADA and the ADEA. Therefore, the Court will GRANT Defendant's Motion for Summary Judgment as to Plaintiff's ADA and ADEA claims. In addition, the Court also finds that Plaintiff has failed to demonstrate genuine issues of material fact that he was wrongfully discharged on the basis of disability and age in violation of the public policy of North Carolina. Therefore, the Court will also GRANT Defendant's Motion for Summary Judgment as to Plaintiff's state-law wrongful-discharge claims.

An Order and Judgment consistent with this Memorandum Opinion shall be filed contemporaneously herewith.